UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD**<br>**c/w 19-131 and 19-132** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendants' Rule 12(B)(6) Motion to dismiss for Failure to State a Claim, or, Alternatively, Rule 56 Motion for Partial Summary Judgment to Dismiss the Wrongful Death and Survival Claims of Jeremy Eades' Parents" (Doc. 169). Because Defendants, Yamaha Motor Corporation, U.S.A. and Sea Fox Boat Company, Inc. rely on evidence outside the pleadings, the Court will analyze the instant motion pursuant to Rule 56.

## FACTUAL STATEMENT

These consolidated lawsuits involve a boat explosion and fire that occurred July 19, 2018, which caused injury to the plaintiffs including Jeremy Eades.[1] Mr. Eades passed away on October 28, 2018 in New Blaine, Arkansas.[2] On January 24, 2019, Cortney Blair Alston filed a supplemental amended complaint as Administratrix of the Estate of Mr. Eades, and on behalf of his minor children, M.T.A. and I A., and on behalf of Ruth Eades and Leland Eades, Mr. Eades natural mother and father.[3]

---

[1] Doc. 1, ¶ 4.
[2] Doc. 78, ¶ 4.
[3] Id.

On the day of the accident, Mr. Eades was employed by Performance Contractors in Louisiana.[4] Mr. Eades had been living with a co-worker and friend, and working on and off in Louisiana since 2015.[5] Also, on that day, a group of employees from Performance Contractors, including Mr. Eades, Mr. Gonzalez, and Mr. Outlaw-Knight decided to go fishing together; Mr. Eades was invited on the trip by his co-worker and friend.[6]

After the fire and explosion, Mr. Eades returned to Arkansas where he lived with his mother and continued to be treated for his injuries.[7] The Death Certificate lists Arkansas as Mr. Eades' state of residence.[8] Mr. Eades was buried in Arkansas.[9] The Louisiana Department of Wildlife and Fisheries report states that Arkansas was Mr. Eades' place of residence at the time of the explosion. [10] One of Mr. Eades' two children is a resident of Arkansas and the other child is a resident of California.

Daniel Henderson, a Louisiana resident, owned the SEA FOX Commander (the "boat") where the explosion and fire occurred.[11] The boat had recently been damaged and repaired in Louisiana.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[4] Defendant's exhibit C, Gonzalez Deposition, pp. 13-14.
[5] Defendant's exhibit D, pp. 60-61; Defendant's exhibit E, Jeremy Eades' W-2 Wage and Tax Statements for 2015-2018.
[6] Defendant's exhibit C, Gonzalez Deposition, p. 130:4-17.
[7] Plaintiff's exhibit 6, Myrtle Eades deposition.
[8] Plaintiff's exhibit 8.
[9] Plaintiff's exhibit 9.
[10] Plaintiff's exhibit 10.
[11] Defendant's exhibit A, Daniel Henderson Deposition, p. 10.

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Defendants move to dismiss the claims of Mr. Eades's natural mother and father, Ruth and Leland Eades. Defendants maintain that Louisiana law applies to this case and as such under Louisiana Civil Code articles 2315.1 and 2315.2, because Mr. Eades was survived by his children, Ruth and Leland Eades (hereinafter referred to as "Plaintiffs") lack procedural capacity to assert their wrongful death and survival actions.

Plaintiffs posit that Mr. Eades was not a domiciliary of Louisiana, but instead, was a domiciliary of Arkansas, therefore Arkansas law applies.  The Arkansas Wrongful Death statute A.C.A. § 16-62-102 provides causes of action for wrongful death and survival for both the surviving children and the parents. The heart of this motion is whether or not Louisiana or Arkansas law applies to Leland and Ruth Eades claims. If Louisiana law applies, Leland and Ruth Eades' claims must be dismissed; if Arkansas law applies, their claims are sustainable.

In maritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade, state remedies remain applicable. *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 199-200; 116 S.Ct. 619, 620 (1996). The two-part test for admiralty jurisdiction over maritime torts was articulated by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & dock Co.,* 513 U. S. 527 (1995).  In order to have admiralty jurisdiction, the tort must have occurred on navigable waters. *Id.* at 534. In addition, the activity giving rise to the tort must have a "connection with maritime activity." *Id.* A connection only exists if the "general features of the incident involved"

could have a "potentially disruptive impact on maritime commers." *Id.* The "general character" of the "activity giving rise to the incident" must bear a "substantial relationship to traditional maritime activity." *Id.*

The incident occurred on navigable waters. The "general features' of the repair and maintenance of boats used on navigable waters has the potential to disrupt maritime commerce and thus bears a significant relationship to traditional maritime activity. The Court finds that it has admiralty jurisdiction over this matter. Because this suit is sitting admiralty, the admiralty's choice of law rules apply. See *Donais v. Green Turtle Bay, Inc.,* 2012 WL 399160, at *5 (W.D. Ky. Feb. 7, 2012). Federal choice-of-law rule in the admiralty arena are governed by the Supreme Court's opinion in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.CT. 921 (1953).

When determining what law to apply in a maritime tort case, a court should consider; (1) the place of the wrongful act, (2) the law of the flag, (3) the domicile of the injured, (4) the allegiance of the defendant shipowner, (5) the place where the contract of employment was made, (6) the inaccessibility of the foreign forum, (7) the law of the forum, and (8) the shipowner's base of operations. *Lauritzen*, 345 U.S. at 583-91. The *Lauritzen* test "is not a mechanical one," and the factors were "not intended as exhaustive." *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 308-309 (1970).

The Restatement (Second) of Conflict of Laws acknowledges the principles of *Lauritzen* and *Rhoditis* "as examples of 'cases emphasizing the importance of applying the local law of that state which has the dominant interest in the decision of the particular issue.'" *Scott,* 399 F.2d 14, 29 n.6 (3d Cir. 1967) (*quoting* Restatement (Second) of Conflict

of Laws § 145, Reporter's Notes (1971)). The following factors are to be considered to determine which state's choice of law applies: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3)the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2) (1971).

When applying the principles of § 6, a court should determine the state with the most significant relationship to the issue by considering the following contacts: (1) the place where the injury occurred, the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2) (1971).

Defendants argue that the choice of law analysis shows that Louisiana has the most significant relationship, thus Louisiana law should apply. Defendants rely on the following: (1) the boat explosion and fire that injured Mr. Eades occurred on Louisiana's territorial waters, (2) the alleged conduct causing the explosion occurred in Louisiana, (3) the owner of the boat lived in Louisiana, (4) repairs to the boat were made in Alabama and Louisiana, (5) Mr. Eades had been living on and off in Louisiana since 2016, (6) Mr. Eades had been working in Louisiana, (7) Mr. Eades frequently fished in Louisiana, (8) the other Plaintiffs who were on the vessel at the time of the explosion were Louisiana residents, (9)

Defendants Sea Fox and Yamaha are qualified to do business and are doing business in Louisiana, (10) Louisiana's interest in protecting its citizens and resident of the state, (11) Louisiana's interest in protecting and regulating the activities of foreign corporations doing business in the state, and (12) the policies and needs of the interstate system, including the expectations of the parties and the minimization of adverse consequences that might follow from subjecting a party to the law of more than one state are best served by the application of Louisiana law.

Plaintiffs argue that Arkansas law applies and maintains that under Louisiana law, survival and wrongful death actions are totally separate and arise at different times. *Walls v. American Optical Corp., et al.,* 740 So.2d 1262, 1273 (La. 1999). The survival action comes into existence simultaneously with the existence of the tort whereas, the wrongful death action does not arise until the victim dies.

Plaintiffs argue that the doctrine of depecage should be applied to parcel out the causes of action—survival action and wrongful death—and apply the laws of different states. See *Simon v. Philip Morris, Inc.,* 124 F.Supp2d 46, 75 (E.D.N.Y. 2000). However, the doctrine of depecage is more readily applied in cases where strict application of the "most obvious" law would work an injustice against one of the parties. See *e.g., Severability of Choice of Law Determination for Each Issue (Depecage),* AM. L. OF PROD. LIAB.3d § 46:5 (2000) (noting that instead of having to apply only one state's laws, "the court must determine the jurisdiction whose law can most appropriately be applied to each issue on the basis of the relation of the pertinent policies of a particular substantive rule to the occurrence and parties"). Where it applies at all, the doctrine of

depecage typically appears in products liability and mass tort matters. *Galapagos Coporacion Trusitica Galatours, S.A. v. Panama Canal Com'n,* 190 F.Supp.2d 900, 907 (E.D. La. Mar. 8, 2002).

Plaintiffs maintain that as to the wrongful death action, Arkansas law should be applied because Mr. Eades was a domiciliary of Arkansas, he died in Arkansas, his mother and one of his children were domiciliaries of Arkansas, and his estate was being probated in Arkansas.

For the survival action, Louisiana is the place of injury and is the place that has the most significant relationship. The vessel owner was domiciled in Louisiana as well as the other Plaintiffs. Defendants Sea Fox and Yamaha were authorized and doing business in Louisiana. Mr. Eades was temporarily living and also working in Louisiana at the time of the incident. The boat owner had the boat repaired in both Alabama and Louisiana, and he performed maintenance on the boat in Louisiana. Thus, the Court finds that Louisiana law will apply to the survival action.

However, the Court finds that to apply Louisiana law to the wrongful death action would cause an injustice against Mr. Eades parents due to the conflict in the two states' laws. The wrongful death action potentially compensates the deceased's survivors, some of which are domiciled in Arkansas. Furthermore, as noted by Plaintiffs, this action did not arise until Mr. Eades expired, while residing in Arkansas, and Mr. Eades' estate is being probated in Arkansas. Therefore, the Court finds that the law of Arkansas should be applied to Plaintiff's wrongful death action.

## **CONCLUSION**

For the reasons set forth herein, the Court will deny Defendants' Motion to Dismiss Ruth and Leland Eades' claims for wrongful death but will grant Defendant's Motion to Dismiss Ruth and Leland Eades' claims for a survival action due to lack of procedural capacity to pursue this right of action.

**THUS DONE AND SIGNED** in Chambers on this 10th day of November, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**