UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HUGO GONZALEZ, ET AL. | * | CIVIL ACTION NOS. 19-130 |
| | * | c/w 19-131 and 19-132 |
| VERSUS | * | |
| | * | JUDGE: JAMES D. CAIN, JR. |
| SEA FOX BOAT COMPANY, INC. | * | |
| | * | MAGISTRATE: KATHLEEN KAY |
| | * | |
| | * | PERTAINS TO: ALL CASES |

*************************************************************************

**MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION/MOTION *IN LIMINE* TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF RUTH RIMMER**

**TABLE OF CONTENTS**


A. Ruth Rimmer Issued Life Care Plans Based on Unsupported Medical Opinions ....1

B. Dr. Henderson's Subsequent "Endorsement" of Dr. Rimmer's Plan(s) is Insufficient ....2

C. Dr. Rimmer Recommends Future Treatments and Care Needs Without Any Medical Support, and Her Opinions Will Mislead the Jury ....5

1) Unsupported Identical Future Treatment Suggestions for Gonzalez and Outlaw-Knight ....7

2) Unsupported Treatment Specific to Gonzalez ....11

3) Unsupported Treatment Specific to Outlaw-Knight ....11

D. Any of Dr. Rimmer's Opinions That Are Not Properly Supported by Treating Physicians Must Be Excluded ....12

E. Dr. Rimmer's Testimony is Excludable Under Rule 403 Because It Is Cumulative, Misleading and Confuses the Issues ....14

CONCLUSION ....16

# TABLE OF AUTHORITIES

## CASES

*Baker v. SSA*,
2015 U.S. Dist. (E.D. La. Jan. 5, 2015) ....................15

*Bastien v.Califano*,
572 F.2d 908 (2d Cir. 1978)....................15

*Cole v. Department of Pub. Safety*,
01-2123 (La. 9/4/02) ....................6

*Curtis v. M&S Petroleum, Inc.*,
174 F.3d 661, 668 (5th Cir. 1999) ....................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 590 (1993)....................5, 13

*Howard v. Offshore Liftboats, LLC*,
13-48116 (E.D. La. Feb. 9, 2016), 2016 WL 540799....................13

*Leggett v. Chater*,
67 F.3d 558, 566 (5th Cir. 1995) ....................15

*Lopez v. Secretary of Health & Hum. Services*,
581 F. Supp. 698 (D.P. R. March 14, 1984) ....................15

*Martinez v. Chater*,
64 F.3d 172, 176 (5th Cir. 1995) ....................15

*Robin v. Allstate Indem. Co.*,
2004-957 (La. App. 3 Cir. 12/8/2004); 889 So.2d 450, 453....................13

*Shepard v. Massananri*,
2002 U.S. Dist. (E.D. La. 08/15/2002) ....................15

*State v. Chauvin*,
2002-1188 (La. 5/20/03), 846 So.3d 647....................13

*Thibeaux v. Trotter*,
04-482 (La. App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692
(La. 2/18/05) ....................6

*Veazey v. State Farm Mut. Auto Ins.*,
587 So.2d 5 (La. App. 3 Cir. 1991) ....................6

**MAY IT PLEASE THE COURT:**

Defendant, **Yamaha Motor Corporation, U.S.A.** and **Sea Fox Boat Company, Inc.** (collectively "Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their motion *in limine* to exclude, limit, and/or strike the attempted medical diagnoses, unsupported life care treatments, and associated testimony of life care planner expert, Ruth Rimmer, Ph.D., CLCP ("Dr. Rimmer").

**A. Ruth Rimmer Issued Life Care Plans Based on Unsupported Medical Opinions.**

Plaintiffs Outlaw-Knight and Gonzalez retained Dr. Rimmer to issue Life Care Plan and Cost Projection Reports in this case. Dr. Rimmer authored two reports relative to her consultations with Hugo Gonzalez and Galloway Outlaw-Knight, dated June 6, 2021 and September 15, 2020 respectively, with an update to Outlaw-Knight's on June 6, 2021.[1]

Dr. Rimmer calculated the alleged total costs of future treatment to be $1,338,434.20 for Gonzalez[2] and $1,717,778.38 for Outlaw-Knight.[3] Dr. Rimmer admits that to draft these reports, she "looked to medical professionals to define the nature and extent of [the patient]'s impairment and disability" and "received input for the plan items prescribed or deemed medically necessary and appropriate from the requisite professional(s)."[4] Dr. Rimmer expressly states in her Report Conclusion (page 75) that her Reports "make certain assumptions regarding Galloway's anticipated future medical course, which if incorrect, could dramatically alter the cost and

---

[1] Dr. Rimmer Report on Gonzalez, attached hereto as Exhibit "A," and Dr. Rimmer Initial Report on Outlaw-Knight, attached hereto, as Exhibit "B."

[2] Exhibit "A", at p. 8.

[3] Exhibit "B," at pp. 7-8.

[4] Exhibits "A" and "B," at p. 11.

frequency of Galloway's future care needs."[5] Under "Foundation for Report," Dr. Rimmer cites Dr. Henderson's Reports and three phone consultations with Dr. Henderson.[6]

Noteworthy, Dr. Henderson is a litigation expert, not a treating physician.[7] He is not utilizing his medical degree in his evaluation of Plaintiffs. He has not prescribed any medication to the Plaintiffs, nor did he order imaging, order or perform procedures, or provide Plaintiffs with any treatment. Instead, he simply records Plaintiffs' subjective complaints during the visits and takes contemporaneous pictures. Where Plaintiffs are concerned, Dr. Henderson has not utilized any specialized skills or knowledge. Indeed, a person without a medical license could do what he has done and is doing.

As more fully set forth herein, this Court should exclude from the trial any attempted medical diagnoses and unsupported life care plan treatments proffered by Dr. Rimmer, including values placed on these treatments, that are not supported by an appropriate medical care provider and/or the facts and evidence.

**B. Dr. Henderson's Subsequent "Endorsement" of Dr. Rimmer's Plan(s) is Insufficient.**

Dr. Henderson authored reports outlining the alleged necessary future treatment, and he was deposed regarding his opinions. Shortly thereafter, Dr. Rimmer drafted life care plans that not only added future care and needs, but also directly contradicted Dr. Henderson's testimony. Illustrative, Dr. Rimmer opines Plaintiffs will need six to eight serial laser treatments for burn

---

5 This statement is not expressly made in Gonzalez's Report, but the same is true.

6 *Id.*, at p. 10.

7 Defendants' are filing contemporaneously a Motion *in Limine* regarding this issue.

scars, costing over $120,000.00.[8] Contrarily, at his depositions a month earlier, Dr. Henderson expressly stated that such treatments are no longer required. Specifically, Dr. Henderson testified that, more probably than not, the laser treatment was no longer needed:

> Q. So regarding the laser treatment, is that something that is still needed more probably than not?
>
> A. I don't think so now because if he was going to develop hypertrophic or keloid scars, he should have some by now. So I think the probability of him now suddenly developing a hypertrophic keloid scar would either take some other type of cut or accident or maybe a car accident, something to now make the skin begin to over-heal, so it's going to be less likely than not that he's going to need laser treatments now.[9]

This is in line with treating physician Dr. Barrios' testimony that neither Mr. Gonzalez nor Mr. Outlaw-Knight would need future wound reconstruction or laser surgery of any kind.[10] Yet, certain treatments listed in Dr. Rimmer's Reports include these types of treatment on the sole basis of Dr. Henderson, which are unsupported and contradicted, including treatment not otherwise sought by Plaintiffs or recommended by their **treating** physicians. Dr. Rimmer is not a medical doctor and is not allowed to prescribe any medications.[11]

When asked to explain the discrepancy during her July 2021 deposition, Dr. Rimmer

---

8 Exhibit "A," at pp. 53 and 98; Exhibit "B," at pp. 52 and 103.

9 Dr. Henderson Outlaw-Knight Deposition Excerpts, p. 48: 6-18, and Gonzalez Deposition Excerpts, p. 93: 6-8, attached hereto *in globo* as Exhibit "C" ("Q. So he does not need the laser treatments that were originally discussed?" "A. No, I didn't see any hypertrophic scars.")

10 Dr. Barrios Deposition Excerpts, p. 53: 22-25, p. 54: 1-20 (Gonzalez) and p. 73: 1-12 (Outlaw-Knight), attached hereto as Exhibit "D". Dr. Richardson testified that the Plaintiffs do not have hypertrophic scarring and therefore do not need laser treatment. Richardson Deposition Excerpts, p. 44: 19-25 and pp. 45:1-5; 64: 10-25, attached hereto as Exhibit "E."

11 Her Ph.D. is in lifespan developmental psychology. Rimmer Deposition Excerpts, p. 12:3-8; p. 29: 6-10, attached hereto as Exhibit "F."

testified, "I sent [Dr. Henderson] what his recommendations to me were, and he signed off on them. He didn't change anything. So I was not aware."[12] This alleged endorsement of Dr. Rimmer's life care plans occurred after Dr. Henderson's reports and depositions. However, Dr. Rimmer did admit that if Dr. Henderson testified that Plaintiffs did not need laser surgeries, she would take them out.[13] Dr. Rimmer agreed that it is the healthcare provider's duty to defend and support the alleged need for any future care contained in her reports.[14]

In reality, while Dr. Rimmer acknowledges the need for physicians to support and identify the treatment contained in her life care plans, Dr. Rimmer takes it upon herself to add "other common needs" because "surgeons don't think of every single thing."[15] For her additions, she relied on a one-paragraph letter from Dr. Henderson purporting that he agreed with the future needs and care projected in Outlaw-Knight's life care plan, dated June 2021.[16] Dr. Henderson's post-deposition rubber stamp of Dr. Rimmer's life care plan for Outlaw-Knight is insufficient to support Dr. Rimmer's non-medical opinions that were not contained in Dr. Henderson's report and supported by Dr. Henderson's deposition testimony. Further, Dr. Rimmer's unrecorded conversations with Dr. Henderson and his alleged "endorsement" letter are not competent evidence because they do not qualify as affidavit or testimony. Thus, they cannot be used to contradict Dr. Henderson's expert reports and prior testimony. For many components of the proffered life care

---

12 Exhibit "F," at p. 91: 1-17.

13 *Id.*, at p. 91: 1-17.

14 *Id.*, at p. 109: 16-19.

15 *Id.*, at p. 93: 15-25 and p. 94: 1-4.

16 *See* 6/24/21 Note from Henderson to Rimmer, attached hereto as Exhibit "G."

plans, Plaintiffs are left with a non-medical Life Care Planner's unsupported opinions on future treatment that no medical professional has recommended.[17]

Dr. Richardson, a board-certified General Surgeon and Burn Surgeon with over twenty-five years of experience, and a professor and current Associate Director of University Health Regional Burn Center, disagrees with virtually all of Dr. Henderson's opinions.[18] She only performs independent medical examinations once or twice per year.[19] The opinions rendered, and methodology utilized, by Dr. Henderson represent standards rejected by other practitioners in the State, and Dr. Henderson's views seemingly run contrary to the overwhelming weight of the epidemiological evidence relied upon by medical practitioners in the various fields herein. This is especially true when he "approves" treatment on paper while testifying that the opposite is true. The truth is that 80% of Outlaw-Knight's and 88% of Gonzalez's bodies were not injured, meaning they still have fully functioning skin and bodies.[20]

**C. Dr. Rimmer Recommends Future Treatments and Care Needs Without Any Medical Support, and Her Opinions Will Mislead the Jury.**

Dr. Rimmer's Reports are unreliable and fail to support certain assumptions and costs. The *Daubert* standard requires that an "expert's opinions be grounded in methods and procedures of science, rather than just subjective belief or unsupported speculation" to ensure reliability. *Curtis*

---

17 Exhibit "F," at p. 108: 11-19.

18 *See* Dr. Kathryn Richardson's Response to Dr. Henderson's Report on Galloway Outlaw-Knight, attached hereto as Exhibit "H"; and Dr. Kathryn Richardson's Response to Dr. Henderson's Report on Huge Gonzalez, attached hereto as Exhibit "I."

19 Exhibit "E," at, p. 13: 18-24.

20 *Id.*

*v. M& S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993)).

Dr. Rimmer's Life Care Plans, as set forth in her Reports, do not meet the *Daubert* threshold. Under Louisiana law, "[a] plaintiff has the burden of proving, by a preponderance of the evidence, entitlement to special damages such as future medical expenses." *Thibeaux v. Trotter*, 04-482 (La. App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La.2/18/05), 896 So.2d 31. It must be proven that these expenses ***will be incurred*** and medical testimony must indicate the probable cost of the expenses. *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La. App. 3 Cir. 1991). If an expert opinion is based upon facts not supported by the record, the opinion may be rejected. *Cole v. Department of Pub. Safety*, 01-2123 (La. 9/4/02), 825 So. 2d 1134. Dr. Rimmer's Reports fail to prove Plaintiffs' alleged needs in several crucial aspects.

First and foremost, Dr. Rimmer is not a licensed medical doctor, let alone Plaintiffs' treating physician, and she does not rely on Plaintiffs' treating physicians for the bases of her opinions and projections. Despite this, Dr. Rimmer has essentially placed herself in that role by formulating an opinion as to Plaintiffs' estimated future medical care. There is no support for Dr. Rimmer's combined recommendations for future occupational/vocational, diagnostic testing, home care, health & strength maintenance, or future surgical care.[21] In other words, there is no evidence that, more probably than not or to any degree of medical certainty, Plaintiffs have incurred or are likely to incur costs for most of the items listed in Dr. Rimmer's Reports.

Taking all these glaring flaws into consideration, Dr. Rimmer's Reports simply lack proper foundation, are inherently unreliable, and therefore, should be deemed inadmissible. Additionally,

---

[21] *See* Footnote 15, *supra*.

any parts of the Plaintiffs' Life Care Plans that utilize Dr. Rimmer's "diagnoses" or unsupported treatment recommendations should be stricken, including all costs allegedly associated with the treatment/items.

As these diagnoses and treatments are not supported by sufficient facts and data or were arrived at by utilizing methods, principles, or specialized knowledge outside of life care planning, they do not meet the strict requirements of Rule 702. Moreover, the Life Care Plan is vastly overstated both in terms of needs and costs. To admit the portions of the Life Care Plan which rely on Dr. Henderson's reports and testimony regarding same under these circumstances would prejudice the defense by exposing the jurors to figures unsupported by the evidence.

**1) Unsupported Identical Future Treatment Suggestions for Gonzalez and Outlaw-Knight.**

Dr. Rimmer takes it upon herself to define the future treatment and care needs for the Plaintiffs despite the absence of such medical needs in any medical expert's report or any treating physician's report. Included in this category are recommendations for both Plaintiffs to have post-operative personal attendant care for five days at eight hours per day, fouteen home health visits for wound care, physical therapy at two to three sessions for ten to twelve weeks, and use of pressure garments for twelve months post-operatively.[22] As discussed, the laser surgeries are no longer necessary. Further, neither Gonzalez not Outlaw-Knight have any future surgery planned. Most importantly, this post-surgical care is not discussed anywhere in Dr. Henderson's extensive reports, which are her alleged source for such costs.

Dr. Rimmer also includes costs in her reports for frequent visits to specialists including

---

22 Exhibit "A," at p. 52. Exhibit "B," at p. 52.

orthopedic surgeons, pulmonologists, hematology, primary care physicians, and dermatologists.[23] All of these recommendations came from Dr. Henderson,[24] who explicitly testified that he is not qualified in these areas of medicine, is not rendering opinions in these areas, and defers to those types of specialists entirely.[25] Besides not being a treating physician, Dr. Henderson is admittedly not able to offer expert opinions in these areas. Dr. Rimmer should not be allowed to rely on such unsubstantiated musings.

Next, Dr. Rimmer lists items that, in her opinion, both Plaintiffs will likely need, including pressure garments, a TED hose, manual wheelchair, humidifier, cane, rolling walker, padded shower bench, handheld shower head, raised toilet seat, Aquaphor, aloe lotion and spray, Band-Aids, Cetaphil, cotton anklets, bacitracin, sun protective clothing, and dressing change materials.[26] Further, Drs. Barrios and Garcelon testified that, more probably than not, Plaintiffs do not need any more Band-Aids, sunscreen, or specialized clothing than the rest of the uninjured population.[27]

---

[23] Exhibit "A," at pp. 54-55. Exhibit "B," at pp. 54-55.

[24] Exhibit "F," at p. 97: 16-23 and p. 101: 6-9

[25] Exhibit C (Outlaw-Knight), p. 39:13-21. *See also* Exhibit C (Hugo Gonzalez), p. 49:7-8. Dr. Henderson's Narrative Report on Hugo Gonzalez, pp. 15-16, attached hereto as Exhibit "O." Plaintiffs' initial treating burn physicians, Drs. Barrios and Garcelon, each testified that Gonzalez and Outlaw-Knight would **not** need to see an orthopedist, pulmonologist, or primary care physician any more than the general population. Exhibit "D," at p. 55: 5-25; Garcelon Deposition Excerpts, at pp. 62-63, attached hereto as Exhibit "J."

[26] Exhibit "A," at pp. 72, 90-93. Exhibit "B," at pp. 72, 92-95.

[27] Exhibit "D," at pp. 53-58 and Exhibit "J," at pp. 60-63, 68-70: Gonzalez will **not** need future over-grafting; wound reconstruction; surgery for hypertrophic or keloid scarring; visits with plastic or reconstructive burn surgeon, orthopedist, pulmonologist, primary care physician, physical therapy; massage therapy; aquatic therapy; sleep study; MRIs or CT scans; help with housekeeping, yard or lawn care, or home maintenance; pressure garments; personal trainer; gym membership; Band-Aids; sunscreen; or specialized clothing.

Again, there is no legal basis for a non-medical and non-treating person to recommend $97,750 worth of medical supply needs in a life care plan without a medical professional deeming such prescribed treatment medically necessary and appropriate.[28]

Similarly, Dr. Rimmer reports that Plaintiffs will require physical therapy, massage therapy, **and** aquatic therapy, as well as sleep studies, gym memberships, personal trainers, and pain and itch management.[29] While Dr. Henderson does mention aquatic therapy, the remaining items are exclusively the endorsement of Dr. Rimmer, who ignores the fact that Drs. Barrios and Garcelon each testified that Gonzalez and Outlaw-Knight would **not** need physical therapy, massage therapy, aquatic therapy, personal trainers, or gym memberships for their burns.[30]

The pattern continues with Dr. Rimmer including life care plan costs for arthritis, sexual dysfunction, and chronic itch, which are not anywhere in Dr. Henderson's reports.[31] As for hearing concerns and seeing an audiologist, there is no medical record suggesting such treatment. Dr. Rimmer opines "*if* hearing loss is detected, he *may* need hearing aids, which can easily cost

---

Exhibit "D," at pp. 72-77 and Exhibit "J," at pp. 87-91: Outlaw-Knight will **not** need future over-grafting; wound reconstruction; surgery for hypertrophic or keloid scarring; visits with plastic or reconstructive burn surgeon, orthopedist, pulmonologist, primary care physician; case manager; physical therapy; massage therapy; aquatic therapy; sleep study; MRIs or CT scans; help with housekeeping, yard or lawn care, or home maintenance; pressure garments; personal trainer; gym membership; Band-Aids; sunscreen; or specialized clothing.

[28] Exhibits "A" and "B," at p. 11.

[29] Exhibit "A," at pp. 57-58. Exhibit "B," at p. 56.

[30] Exhibit "D," at pp. 53-58 and pp. 72-77. Exhibit "J," at pp. 60-63, 68-70 and pp. 87-91

[31] Exhibit "A," at pp. 57-58. Exhibit "B," at p. 57.

thousands of dollars and have a frequent replacement schedule."[32] There is no citation to a medical record or publication supporting such a speculative statement. Therefore, these treatments and expenses are baseless and should not be included within the Report and the jury should not hear testimony relative to these speculative and unsupported expenses.

Dr. Rimmer's Reports include anticipated costs for nearly a dozen "current medications" besides laxatives and multivitamins, which are unsupported by medical or factual evidence.[33] Rather, Outlaw-Knight testified that he only takes sleep medication and Adderall,[34] and Gonzalez testified that he only takes sleep medication.[35] There is no indication that Gonzalez and Outlaw-Knight are currently taking any of the pain medications listed in Dr. Rimmer's Reports, and Plaintiffs' own representations to providers reveal that the "current medications" listing in Dr. Rimmer's Reports are based on inaccurate information and are unreliable.

Lastly, Dr. Rimmer proposes that the Plaintiffs require monthly and weekly heavy housekeeping assistance and yard and lawn care for life, as well as weekly interior and exterior maintenance.[36] Included in this projection are costs associated with skilled nurse care. These services are predicted to cost over $1,000,000.00 for Outlaw-Knight and nearly $600,000.00 for Gonzalez.[37] These figures are completely unsupported by the evidence. There is no evidence, and

---

32 Exhibit "A," at p. 57.

33 Exhibit "B," at pp. 95-97; Exhibit "A," at pp. 93-94.

34 Outlaw-Knight Deposition Excerpts, at pp. 175-176, attached hereto as Exhibit "K."

35 Gonzalez Deposition Excerpts, at p. 224, attached hereto as Exhibit "L"

36 Exhibit "A," p. 73. Exhibit "B," at pp. 71-72.

37 Exhibit "F," at pp. 106-108.

Dr. Rimmer likewise fails to offer any, that Plaintiffs would be unable to do these tasks themselves, or that these tasks would fall to the Plaintiffs who have spouses and children and have never been assigned an impairment rating or otherwise deemed disabled by their treating physicians. There is no evidence that Plaintiffs are currently unable to or will be unable to do these tasks, as extrapolated by Dr. Rimmer in the life care plan. Again, Drs. Barrios and Garcelon testified that, more probably than not, the Plaintiffs do not need any help with housekeeping, yard or lawn care, or home maintenance, and have not been medically limited since being discharged in 2018.[38]

**2) Unsupported Treatment Specific to Gonzalez.**

Dr. Rimmer's Report includes amounts for Gonzalez to undergo twelve sessions of paramedical or scar camouflage tattooing every ten years for life.[39] This future treatment costing $46,800.00 was solely Dr. Rimmer's idea and has no medical basis.[40]

**3) Unsupported Treatment Specific to Outlaw-Knight.**

Regarding Dr. Rimmer's Report on Outlaw-Knight, she again defers to Dr. Henderson, a non-treating physician, while ignoring the testimony of actual treating physicians. For example, Dr. Rimmer includes many costs related to an arthroscopic subacromial decompression and post-operative care for a surgery Dr. Lyons recommended in 2019.[41] But Outlaw-Knight has not returned to Dr. Lyons and no surgeries have been scheduled. This also conflicts with Outlaw-Knight's treating neurosurgeon, who did not place any types of restrictions on Outlaw-Knight and

---

38 Exhibit "D," at p. 55: 5-25; Exhibit "J," at, pp. 62-63.

39 Exhibit "A," p. 56.

40 Exhibit "F," at pp. 111: 8-17.

41 Exhibit "B," at p. 53

has no plans to see him again since his pain resolved.[42] It is also worth noting that Dr. Rimmer never mentions Outlaw-Knight's nurse practitioner, Dennis Kleinpeter. Outlaw-Knight told NP Kleinpeter that he had no emotional problems, anxiety, or mood changes,[43] panic attacks, change of sleep pattern, loss of interest, irritability, depression, or feelings of hopelessness.[44] Outlaw-Knight also denied physical complaints neck, back, shoulder or joints pain,[45] and testified that his medications were working, allowing him to sleep 8 hours per night on average.[46] The only medication NP Kleinpeter is still prescribing to Outlaw-Knight is for his ADHD.[47] Yet, Dr. Rimmer singlehandedly opines that Outlaw-Knight will require the services of a case manager for the next three years to help him manage his orthopedic and laser surgeries (that will never occur), his occupational and psychotherapy visits, and his medications.[48]

**D. Any of Dr. Rimmer's Opinions That Are Not Properly Supported by Treating Physicians Must Be Excluded.**

Federal Rule of Evidence Rule 702 governs the admissibility of expert testimony. The Rule provides that an expert testimony if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)

---

42 Dr. Bradley Bartholomew Deposition Excerpts, at p. 47:18-24, attached hereto as Exhibit "M."

43 NP Kleinpeter Deposition Excerpts, at p. 27: 7-25, attached hereto as Exhibit "N."

44 *Id.*, at p. 34-37.

45 *Id.*, at p. 26: 11-16; and p. 35: 10-25.

46 *Id.*, at p. 29: 20-23.

47 *Id.*, at p. 43: 2-15.

48 Exhibit "B," at p. 73

The testimony is based on sufficient facts or data; (c) The testimony is the product of reliable principles and methods; and (d) The expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, the United States Supreme Court imposed a "gatekeeping" obligation upon courts to ensure that such testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). See also *State v. Chauvin*, 2002-1188 (La. 5/20/03), 846 So.3d 647. Although Defendants do not dispute Dr. Rimmer's qualifications as an expert in life care planning, her proposed medical diagnoses are far afield of the role of a life care planner, and therefore do not meet the rigorous standards of Rule 702. Additionally, the lack of documentation to support Dr. Rimmer's conclusions further indicates that faulty or incomplete facts and data were relied upon in formulation of her opinions regarding the Plaintiffs' future care.

Courts have consistently held that a life care plan should fit with the actual care a plaintiff is receiving. *See, e.g.*, *Howard v. Offshore Liftboats*, LLC, 13-48116 (E.D. La. Feb. 9, 2016), 2016 WL 540799 (allowing life care planner, Gorman, to rely on "Dr. Savant's reports only to the extent she identified the treating physician on which she relied for the basis of her opinions....").

As for "surgical intervention," there are no future surgeries planned or recommended for the Plaintiffs. Because Dr. Rimmer is designated as a life care planner, is not the Plaintiffs' treating physician, and stated that her examinations did not include prescribing treatments, her attempted projection of the Plaintiffs future medical costs are improper. *See Robin v. Allstate Indem. Co.*, 2004-957 (La. App. 3 Cir. 12/8/2004); 889 So. 2d 450, 453 (holding that a certified life care planner cannot diagnose or treat patients; a certified life care planner "tells you the future cost of medical treatment as outlined by physicians").

Dr. Rimmer is essentially asking the jury to accept her diagnoses of Plaintiffs, without a medical degree, the proper treating physician relationship, and without having acted toward the goal of treatment. However, Dr. Rimmer, by her own admission, met each Plaintiff in person only one time with a few Zoom Calls, in her limited capacity as a life care planner. Dr. Rimmer's function, by definition, was to assess the values associated with and details regarding the long-term treatment of Plaintiffs, based on what Plaintiffs' treating physicians have diagnosed. First, Dr. Rimmer relies on Dr. Henderson, a litigation expert who did not include in his reports or testimony many of the items contained in the life care plans. Second, Dr. Rimmer's lagniappe "diagnoses" cannot aid the trier of fact; despite her Ph.D., the methods, principles and/or specialized knowledge utilized are beyond those accepted for licensed life care planners. Dr. Rimmer's Reports, including all attempted diagnoses, should be stricken. Additionally, since Dr. Rimmer is expected to testify about those unsupported items in her reports, Dr. Rimmer should be disqualified as a witness or, alternatively, her testimony should be limited in scope to include only those care items expressly recommended by Plaintiffs' treating physicians or Rule 26 litigation experts where properly supported by the evidence.

**E. Dr. Rimmer's Testimony is Excludable Under Rule 403 Because It Is Cumulative, Misleading, and Confuses the Issues.**

Rule 403 of the Federal Rules of Evidence states that, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendants do not concede that Dr. Rimmer's testimony or opinions are relevant, because they are not for the reasons stated above. However, even assuming *arguendo* that her opinions could be deemed to have some relevance, this Court should exclude Dr. Rimmer's reports and her testimony because her recommendations address the

same injuries and treatment plans of Plaintiffs' treatment team, and in some cases run contrary to her treatment plan. Plaintiffs' physicians' opinions and testimony enjoy deference and any other experts addressing the same or similar issues would be cumulative and create an unreasonable risk of confusing the issues because they contradict the course of treatment described by plaintiffs' treating physicians.

The treating physician rule states that controlling weight must be given to the treating physician's opinions if they are well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. See *Baker v. SSA*, 2015 U.S. Dist. (E.D. La. Jan. 5, 2015) citing, *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). *See also Lopez v. Secretary of Health & Hum. Services*, 581 F. Supp. 698 (D.P.R. March 14, 1984), citing *Bastien v. Califano*, 572 F.2d 908 (2d Cir. 1978) ("The expert opinion of a treating physician as to the existence of a disability is binding on the fact finder unless contradicted by substantial evidence to the contrary."). A treating physician's opinions are binding on the plaintiff absent a showing of good cause and unless there is sufficient evidence to support a contrary conclusion. *See id*. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Id*., *quoting Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). A treating physician's opinion is entitled to great weight, and absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, that opinion may not be rejected without a detailed analysis of the reasons therefor. *See Shepard v. Massanari*, 2002 U.S. Dist. (E.D. La. 08/15/2002).

The purpose of Rule 403 is to eliminate evidence that confuses the issues, misleads the finder of fact, or is cumulative of other evidence. Allowing Plaintiffs' life care planner to give

testimony that directly conflicts with their own treating physicians creates an undue risk that issues will become confused and/or that Plaintiffs would be permitted to submit misleading evidence. For example, in this case, if the Court does not bind Plaintiffs (and their experts) to the medical records/opinions of their treating physicians, Dr. Rimmer will introduce evidence that Plaintiffs will be permanently disfigured and disabled and will require lifelong care, and that they will require substantial future medical procedures that have not been recommended by any treating physician or qualified expert. This would confuse and mislead the jury, as Dr. Rimmer's reports do not cite to any medical record indicating that Plaintiffs' treating medical professionals have recommended these procedures. Permitting her testimony, report, and opinions would therefore cause substantial confusion among the jury as to which proposed treatment is speculative and which treatment has been recommended by a treating medical professional.

## CONCLUSION

Dr. Rimmer's involvement in this case is to artificially bolster the Plaintiffs' claim for future care expenses. Most of Dr. Rimmer's conclusions are speculative at best and are not supported by Gonzalez's or Outlaw-Knight's treating doctors' recommendations. Additionally, certain treatments listed in her Reports are unsupported by medical evidence, including treatment not sought by the Plaintiffs or recommended by their treating physicians. Moreover, the Life Care Plans vastly overstate both needs and costs. As these diagnoses and treatments are not supported by sufficient facts and data or were arrived at by utilizing methods, principles, or specialized knowledge outside of life care planning, they do not meet the strict requirements of Rule 702. To allow testimony or portions of the Life Care Plans under these circumstances would prejudice the defense by exposing the jurors to figures outside that which is supported by the evidence. Thus, Dr. Rimmer's Reports should be excluded from evidence, and Dr. Rimmer should be stricken as a

witness or, alternatively, her testimony should be limited to only those care items deemed reasonably necessary by Plaintiffs' treating physicians.

Respectfully Submitted:

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER, WEINSTOCK & BOGART**

s/Joseph G. Glass

**ANDREW D. WEINSTOCK (#18495)**
**JOSEPH G. GLASS #25397**
**LAURA L. POUSSON (#38871)**
3838 North Causeway Blvd., Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 324-0676
andreww@duplass.com
jglass@duplass.com
lpousson@duplass.com

and

**FRANK D. HOSLEY (*Pro Hac Vice)***
**BOWMAN AND BROOKE, LLP**
1064 Greenwood Boulevard, Suite 212
Lake Mary, FL 32746
Telephone: (407) 585-7601
Facsimile: (407) 585-7610
Frank.hosley@bowmanandbrooke.com

and

**FLANAGAN PARTNERS LLP**

s/Thomas M. Flanagan

Thomas M. Flanagan (La. Bar #19569)
Anders F. Holmgren (La. Bar #34597)
Laurent J. Demosthenidy (La. Bar #30473)
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com

aholmgren@flanaganpartners.com
ljd@flanaganpartners.com
**Counsel for Defendant, Yamaha Motor Corporation, U.S.A.**

and

**MG&M LAW FIRM**

s/David R. Frohn

______________________________
**DAVID R. FROHN #5758**
2201 Lake Street, Suite 106
Lake Charles, LA 70601-7199
Telephone: (337) 419-1929
Facsimile: (337) 564-6899
dfrohn@mgmlaw.com

and

**MG&M LAW FIRM**

s/Meghan B. Senter

______________________________
**MEGHAN B. SENTER #34088**
365 Canal Street, Suite 3000
New Orleans, LA 70130
Telephone: (504) 535-2880
Facsimile: (5040 535-2886
msenter@mgmlaw.com
**Counsel for Defendant, Sea Fox Boat Company, Inc.**

**C E R T I F I C A T E**

I hereby certify that on the 15th day of March 2022, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

s/Joseph G. Glass

______________________________
**JOSEPH G. GLASS #25397**