UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion in Limine [doc. 284] filed by defendants and seeking to limit or strike the expert report and testimony of plaintiff expert witness Randy Rice under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff Cortney Blair Alston opposes the motion. Doc. 340.

### I.
#### BACKGROUND

This suit arises from a maritime accident that occurred on or about July 29, 2018, on a 2014 Sea Fox Commander vessel, while plaintiffs Jeremy Eades, Hugo Gonzales, and Galloway Outlaw-Knight were changing out the vessel's batteries. All three were seriously injured in the explosion and resulting fire, and Eades has since died of mixed drug intoxication. Plaintiffs have attributed the explosion to a leaking fuel water separator filter, causing the presence of gasoline vapors on the vessel, and filed suits against Yamaha Motor Corporation USA ("Yamaha"), as designer of the filter, and Sea Fox Boat Company, Inc.

("Sea Fox"), as designer/manufacturer of the vessel. Doc. 1. The matter is now set for jury trial before the undersigned on May 16, 2022.

The Eades plaintiffs have given notice of their intent to introduce testimony from forensic economist Randy Rice on the loss of earnings resulting from the death of Jeremy Eades. Yamaha and Sea Fox now move to limit Rice's testimony, asserting that Rice's opinions are misleading and irrelevant to the pecuniary damages available for the wrongful death claim maintained by his mother, Ruth Eades, and minor children because they do not account for (1) Jeremy Eades's personal consumption of his income, (2) the historical support Jeremy Eades's mother and children received from him, or (3) the ages of the children to majority and the life expectancy of Ruth Eades. Doc. 284, att. 1. They also assert that the lost income figure fails to properly account for termination of child support payments. *Id.* Plaintiff Cortney Blair Alston, mother of one of Eades's minor children, opposes the motion. Doc. 340.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles

and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

**B. Application**

In his deposition Rice acknowledged that the only question he was asked to address by plaintiffs' counsel was Mr. Eades's loss of earnings according to his work-life balance. Doc. 284, att. 3, pp. 4, 10. Accordingly, his final figure did not account for Jeremy Eades's personal consumption of his income even though it was "totally appropriate" for an

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

economist to apply this factor. *Id.* at 10–13. Likewise, Rice's brief report shows that he has not taken into consideration historical support or life expectancy/age to majority the claimants. *See* doc. 284, att. 3.

As defendants point out, Rice's calculations are thus incomplete as to any loss of support claim—which is all that Ruth Eades and the children are entitled to under their wrongful death claim, arising under Arkansas law.[2] *Lowe v. United States*, 662 F.Supp. 1089, 1094 (W.D. Ark. 1987). They also point out that, in calculating Jeremy Eades's future earnings, Rice failed to account for the fact that Jeremy Eades's child support obligation to one of his children would cease once that child reached the age of majority. Plaintiffs admit as much, but as defendants also allow, damages for loss of support are speculative in nature. Arkansas courts have deemed several factors appropriate to the consideration of such an award, including but not limited to personal consumption, customary past contributions, life expectancy of the dependent, and the time that will elapse before a minor child reaches majority. *Johnson v. Cross Ref. & Mktg., Inc.*, 2002 WL 1204419, at *4 (Ark Ct. App. 2002) (citing *Lowe*, 662 F.Supp. at 1095). While plaintiffs propose that Rice might apply a personal consumption factor during his testimony at trial, the court agrees with defendant that allowing this effective eleventh-hour supplementation of his report would deprive the defense of its right to adequately inquire into his methods.

Nonetheless, Rice is only being offered to testify as to what plaintiffs requested of him: total lost earnings of Jeremy Eades. To the extent he failed to properly account for

---

[2] Eades had been working on and off in Louisiana since 2015 at the time of the accident, but was a resident of Arkansas at the time and returned to Arkansas afterwards and died there. Doc. 204. Accordingly, the court has determined that Louisiana law governs his survival action but Arkansas law governs the wrongful death claim. *Id.*

termination of child support payments, this challenge goes to the weight rather than the admissibility of his testimony. To the extent his figure is inapplicable to a loss of support claim, limiting instructions are available to ameliorate any jury confusion. *Lance Meadors v. D'Agostino*, 2020 WL 6342637, at *2 (M.D. La. Oct. 29, 2020). The defense will presumably have its own economist available to testify as to the actual loss of support figure at issue, using his or her application of the appropriate factors, and the mismatch between Jeremy Eades's total lost income versus the amount claimable as a loss of economic support serves as excellent fodder for cross-examination. Accordingly, the motion will be denied.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion in Limine [doc. 284] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers this 6th day of May, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE