UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion in Limine [doc. 291] filed by defendant Yamaha Motor Corporation USA ("Yamama"), which seeks to limit the opinion testimony and strike the report of plaintiff expert witness William Vigilante under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiffs oppose the motion. Docs. 343, 363.

### I.
### BACKGROUND

This suit arises from a maritime accident that occurred on or about July 29, 2018, on a 2014 Sea Fox Commander vessel, while plaintiffs Jeremy Eades, Hugo Gonzales, and Galloway Outlaw-Knight were changing out the vessel's batteries. All three were seriously injured in the explosion and resulting fire, and Eades has since died of mixed drug intoxication. Plaintiffs have attributed the explosion to a leaking fuel water separator filter, causing the presence of gasoline vapors on the vessel, and filed suits against Yamaha, as designer of the filter, and Sea Fox Boat Company, Inc. ("Sea Fox"), as

designer/manufacturer of the vessel. Doc. 1. The matter is now set for jury trial before the undersigned on May 16, 2022.

Plaintiffs attribute the accident to a leak in the starboard fuel/water separator filter. They have given notice of their intent to introduce expert testimony from William Vigilante, who specializes in ergonomics/human factors. Vigilante has issued a report based on his research of the accident, including the warning labels and maintenance schedules of the applicable parts and interviews with the vessel owner and plaintiffs. Doc. 291, att. 3. Among his opinions, he concludes that Yamaha "could have and should have [identified] the potential fire and explosion hazards associated with corrosion related leaks in its filter due to extended use, particularly in salt water and/or confined applications" and that the warnings it provided relating to the filter were inadequate to provide users, like the owner of the vessel in this case, with critical safety information. *Id.* at 33–35. He also emphasizes that, in the absence of an alternative design or safeguards for the filter, Yamaha at least should have provided an adequate warning and that the cost to do so would have been insignificant. *Id.* at 35.

Yamaha now moves to exclude or limit Vigilante's anticipated opinion testimony, arguing that he is not qualified to opine on the design of the filter and should not be permitted to speculate on the cause of the explosion. It also asserts that his opinions on the foreseeability of misuse and the adequacy of instructions/warnings should be excluded on the grounds that they are not reliable scientific methodology, interfere with the jury's fact-finding role, and are conjecture/conclusory arguments. Doc. 291, att. 1. Plaintiffs oppose the motion. Docs. 343, 363.

## II.
## LAW & APPLICATION

**A. Governing Law**

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24,

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Yamaha first argues that Vigilante is not qualified to testify about the design or manufacture of the filter. Plaintiffs state that they do not intend to have him comment on the physical design of the filter or the cause of the explosion, and indeed his report contains no substantive conclusions on either issue. As he explained in his deposition, however, "part of the product design issue" that members of his field address "is information communicated to the user regarding the product, how to use the product, hazards associated with the product" and, accordingly, that "warnings are an integral part of the design and development of any product." Doc. 291, att. 2, p. 3. Vigilante's CV shows that he is well qualified to testify in this area. *See* doc. 343, att. 1. Accordingly, this challenge presents no basis for exclusion or limitation.

As for Yamaha's general challenge to the reliability of Vigilante's field and its argument that he will testify as to the ultimate issue, Yamaha argues that he relies on gut feelings rather than any scientific method and that the adequacy of warnings is a fact issue on which jurors do not require expert assistance. To this end it points to the exclusion of another human factors expert in FEMA trailer litigation in the Eastern District of Louisiana. *In re FEMA Trailer Formaldehyde Prods. Litig.*, 2009 WL 2169224 (E.D. La. Jul. 15, 2009). However, Vigilante's field "is a recognized analytical approach that is applied in a

variety of contexts and may yield legitimate insights as to the hazards that particular products and situations . . . may pose in light of predictable human behavioral patterns." *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). Vigilante's testimony in this field has been accepted by federal courts across the country. *See, e.g.*, *Nester v. Textron, Inc.*, 2015 WL 7272249 (W.D. Tex. Nov. 17, 2015); *Durkin v. Wabash Nat'l*, 2013 WL 1314744 (D.N.J. Mar. 28, 2013); *Jenks v. N.H. Motor Speedway*, 2012 WL 405479 (D.N.H. Feb. 8, 2012). His report is supported by citations to multiple sources on product warning systems, product safety engineering, and risk management principles. Doc. 291, att. 3. Accordingly, the court finds no merit to Yamaha's generalized challenge to the reliability of his methods. Vigilante is qualified to testify as to the adequacy of warnings and the foreseeability of misuse in a manner that will assist the trier of fact.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion in Limine [doc. 291] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers this 10th day of May, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE