UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion in Limine [doc. 306] filed by defendants and seeking to limit the testimony of plaintiff expert witness Darrell Henderson under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiffs oppose the motion. Doc. 350.

### I.
### BACKGROUND

This suit arises from a maritime accident that occurred on or about July 29, 2018, on a 2014 Sea Fox Commander vessel, while plaintiffs Jeremy Eades, Hugo Gonzales, and Galloway Outlaw-Knight were changing out the vessel's batteries. All three were seriously injured in the explosion and resulting fire, and Eades has since died of mixed drug intoxication. Plaintiffs have attributed the explosion to a leaking fuel water separator filter, causing the presence of gasoline vapors on the vessel, and filed suits against Yamaha Motor Corporation USA ("Yamaha"), as designer of the filter, and Sea Fox Boat Company, Inc. ("Sea Fox"), as designer/manufacturer of the vessel. Doc. 1. The matter is now set for jury trial before the undersigned on May 16, 2022.

Plaintiffs have given notice of their intention to introduce testimony from Darrell Henderson, a plastic surgeon who treated the burn wounds of Gonzales, Outlaw-Knight, and Eades. By separate motion defendants have objected to the designation of Henderson as a treating physician, and the court has rejected that challenge. In this motion defendants seek an order prohibiting Dr. Henderson from offering expert testimony regarding causation, psychological diagnoses, speculative future complications, and opinions on vocational rehabilitation and economic losses. Doc. 306. Plaintiffs oppose the motion.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Dr. Henderson is a board-certified plastic surgeon specializing in reconstructive plastic surgery, with years of experience treating burn patients. *See* doc. 306, att. 5, pp. 1–3. He issued reports for all three plaintiffs in 2018, opining on their diagnoses and, in the case of Gonzales and Outlaw-Knight, treatment needs. Doc. 306, atts. 4–6. He also issued a supplemental report on Outlaw-Knight in 2022. Doc. 306, att. 8. In the original reports he described the surface area of the burns on each plaintiff and their impact on function. He also described plaintiffs' psychological symptoms and opined that all three should be referred for psychology consults, physical therapy, pulmonology consults, and ongoing monitoring of their wounds with possible laser surgery if compression garments failed to

keep the scars from turning hypertrophic or into keloids.[2] Henderson also stressed the risk of heat exposure, skin instability, and permanent impairment with plaintiffs' conditions, and stated on the issue of causation that leaking gas from somewhere in the boat could have created a "perfect storm" where a spark caused by changing the battery might have resulted in an explosion. In his supplemental report on Outlaw-Knight, Henderson provided a three-page update on the plaintiff's wound situation and then stated that his recommendations from the 2018 report remained unchanged. Doc. 306, att. 8.

The court agrees that any testimony on the cause of the accident is beyond Henderson's expertise. Henderson's other opinions, however, appear sufficiently tied to his established experience with burns and reconstructive wound care to satisfy *Daubert*'s standards. He testified as to the possible trauma of wound-inflicting events, symptoms described by each patient and need for further psychological treatment; this is within the scope of his expertise as a specialist who deals with traumas and may make referrals to other specialists. Although he hypothesized about certain diagnoses, such a traumatic brain injury, he did not indicate that he had performed the testing appropriate to give such a result or to offer a treatment plan. Likewise, as a physician who has reviewed the details of the accident he may opine on the possible need for a pulmonary consult. Accordingly, Henderson may testify as to the need for psychiatric/psychological and pulmonary consults as well as counselling needs for burn patients in general, but he may not offer a diagnosis or testify as to the likelihood of a treatment plan for any plaintiff.

---

[2] Henderson stated that, in his experience, the compression garments were effective 40 to 50% of the time while the laser treatment was effective 85 to 90% of the time. Doc. 306, att. 4, pp. 10–11.

Finally, Henderson described the potential complications of the wounds and the obstacles they posed for returning to plaintiffs' occupations, which involved heat exposure and physical strain. These are areas within the scope of his expertise, and he may offer these opinions as they relate to the plaintiffs' economic loss claim. Defendants may in turn challenge Henderson's view on the likelihood of complications and the extent to which his experience adequately supports these opinions through cross-examination and the presentation of their own experts' testimony.

### III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion in Limine [doc. 306] be **GRANTED IN PART** and **DENIED IN PART**. Henderson is barred from offering opinions on the cause of the accident, and limited as described above in his testimony concerning psychological and pulmonary diagnoses, but may otherwise testify as to all the material contained in his reports.

**THUS DONE AND SIGNED** in Chambers this 10th day of May, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE