**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| HUGO GONZALEZ | CASE NO.  2:19-CV-00130 LEAD |
| | c/w 19-131 and 19-132 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| | |
| SEA FOX BOAT CO INC | MAGISTRATE JUDGE KAY |

<u>**MEMORANDUM RULING**</u>

Before the Court is "Yamaha Motor Corporation, U.S.A.'s Motion for Summary Judgment Regarding Plaintiff's Claims of Negligence, Strict Liability and Failure to Warn" [Doc. 239]. Yamaha Motor Corporation, U.S.A. ("YMUS") moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in its favor on the grounds that the record evidence establishes, as a matter of law, that:

(1) When heeded, the warnings and instructions on the 2015 Yamaha MAR-FUELF-IL-TR 10-Micron Water/Fuel Separating Filters that are the subject of Plaintiffs' defect allegations ("Subject Filters") – and their packaging – render them safe for their intended use and, therefore, those filters are not defective or unreasonably dangerous;

(2) The fact that the Subject Filters are not defective or unreasonably dangerous for purposes of Plaintiffs' strict liability claims also is fatal to Plaintiffs' negligence claims;

(3) Plaintiffs (and Defendant Henderson) did not read, let alone heed the Subject Filters' on-product and on-packaging warnings and instructions and, therefore,

additional and/or differently worded instructions/warnings would have been futile, and

(4) Plaintiffs were aware of the dangers that allegedly resulted in their injuries, to wit that: (a) when exposed to salt water over time, metal rusts and can corrode; and (b) gasoline and gasoline vapors will ignite in the presence of sparks or other ignition sources; and therefore, YMUS did not have a duty to warn of those well-known dangers.

Plaintiffs oppose the motion [Docs. 303;304] and YMUS has submitted reply memoranda [Doc. 318]. As such, this matter is fully briefed and ready for ruling.

## **FACTUAL STATEMENT**

These consolidated lawsuits involve a boat explosion and fire that occurred July 29, 2018, which caused injury to the plaintiffs including Jeremy Eades.[1]  Mr. Eades passed away on October 28, 2018 in New Blaine, Arkansas.[2] On January 24, 2019, Cortney Blair Alston filed a supplemental amended complaint as Administratrix of the Estate of Mr. Eades, and on behalf of his minor children, M.T.A. and I A., and on behalf of Ruth Eades and Leland Eades, Mr. Eades natural mother and father.[3]

At the time of the incident the boat, a 2014 Sea Fox 256 Commander, was equipped with two 2013 Yamaha F150XA engines ("Subject Engines").[4] The boat was also equipped

---

[1] Doc. 1, ¶ 4.
[2] Doc. 78, ¶ 4.
[3] Id.
[4] Doc. 239-2. Defendant's Exhibit A.

with the Subject Filters, which are designed to filter particulate matter and water our of the fuel before it reaches the engines.[5]

On December 7, 2017, the boat was damages in an accident and taken to the Olmstead Shipyard in Lake Charles, Louisiana for repairs.[6] Olmstead Shipyard received the boat at the shipyard in March 2018, but did not begin the repairs until May 2018.[7] Olmstead Shipyard completed the repairs on or about June 25, 2018, and Henderson retrieved the boat on or around July 26, 2018.

After retrieving the boar, Henderson towed the boat to the home of Randy Englebert, where he customarily stored it, in anticipation of his plans to go fishing with Plaintiffs, Galloway Outlaw-Knight, Hugo Gonzalez, and Jeremy Eades.[8] The following day, Henderson injured his back in a car accident. He told the others, including Plaintiffs, that he wouldn't be able to go, but they were could still use the boat. *Id.*

The morning of the incident, Plaintiffs arrived at Engelbert's camp and Eades tried to start the subject engines to make sure they would not start before the batteries were changed. Gonzales retrieved the new batteries from his truck, went into the boat, opened the battery compartment, removed the old batteries and proceeded to install the new batteries. Plaintiffs did not inspect the vessel for fuel leaks prior to launching,[9] and did not review any manuals regarding the vessel prior to the accident. [10]

---

[5] Doc. 239-3. Defendant's Exhibit B.
[6] Doc. 239-5. Defendant's Exhibit D.
[7] Doc. 239-6. Defendant's Exhibit E.
[8] Doc. 239-7. Defendant's Exhibit F.
[9] Defendant's exhibit B, Hugo Gonzalez, pp. 133:20–134:6, 136:22–25.
[10] *Id.* pp. 133:20–134:6, 136:22–25; 137:18–21.

Yamaha is aware that the filters may be mounted in the bilges of boats, yet has never suggested they should not be, and has never prohibited filters from being mounted in bilges.[11] Sierra International, who manufactured the filters, also knows the filters may be installed in the bilge, and confirms that they are designed for that environment, including the possible accumulation of saltwater.[12] The vessel design was audited by the National Marine Manufacturers Association ("NMMA") and was certified using the standards of the American Boat and Yacht Counsel ("ABYC").[13] Plaintiffs dispute this fact. Sea Fox maintains that the location of the filters was compliant with ABYC requirements.[14] Plaintiffs dispute this fact.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."

---

[11] Defendant's exhibit C, Mills depo. p. 86:25–7.
[12] Defendant's exhibit D, Sierra International depo. pp. 143:14–144:16.
[13] Defendant's exhibit E, Marhevko Report, p. 10–11.
[14] *Id*.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Defendants YMUS move to dismiss the Plaintiffs' claims of Negligence, Strict Laibility, and Failure to Warn. YMUS first argues that it is entitled to Summary Judgment on the strict liability claims because the subject filters were not in a defective or unreasonably dangerous condition.

### *Strict Liability and Negligence*

The United States Supreme Court and the Fifth Circuit recognize products liability as part of the general maritime law. *East River S.S. Corp v. Transamerica Deleval*, 476 U.S. 858 (1986); see also *Ortega Garcia v. United States*, 986 F.3d 513, 531-32 (5th Cir.

2021). Numerous Courts agree that §402A of the Second Restatement supplies the substantive law in our circuit for maritime products liability claims. *Authment v. Ingram Barge Co.*, 977 F. Supp. 2d 606 (E.D. La. 2013).

Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or his property if:
   a. The seller is engaged in the business of selling such a product, and
   b. It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

A product can be defective in one of three ways: (1) its design; (2) its manufacture; and/or (3) its lack of an adequate warning. *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 288 (5th Cir. 1975). Defendants argue that Comment j to Section 402A makes clear that "[w]here [a] warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A cmt. j (Am. Law Inst. 1965).

Defendants maintain that the evidence establishes that the on-packaging and on-product instructions and warnings advise the users of the subject filters to: (1) check for leaks after installation and every engine start-up; and (2) to replace the filter every 50 hours or 6 months, whichever comes first. Docs. 239-11; 239-12 Exhibits J and K. Defendants cite to the deposition of Anand Kasbekar, Plaintiff's expert, who opined that the subject filters had been installed in the vessel for between 13 and 20 months, though Mr. Kasbekar acknowledges that Mr. Henderson indicated it was about 13 months.

YMUS argues that this falls within comment j to the Second Restatement, in that: (1) the Subject Filters bore warnings and instructions which, if read and heeded, render them safe for their intended use; and (2) YMUS reasonably assumed that the vessel owner would read and heed those warnings and instructions. As such, YMUS maintains that the Subject Filters were not in a defective condition, nor can they properly be found to be unreasonably dangerous and YMUS is entitled to summary judgment on Plaintiffs' strict liability claims.

YMUS argues alternatively that the subject filters were not in a defective, unreasonably dangerous condition and this is fatal to Plaintiffs' negligence claim. To establish a products liability claim, whether it is predicated on negligence or strict liability, plaintiffs must prove that: (1) they were injured by a product that was manufactured and/or sold by the defendant; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) at the time of the injury causing event, the product was essentially in the same condition as it was when it left the hands of the defendant. *Murry v. Aran Energy Corp.*, 863 F. Supp. 316, 320 (E.D. La. 1994). YMUS maintains that the subject filters are not defective or unreasonably dangerous, as a matter of law, because they are accompanied by on-product and on-packaging warnings and instructions directing users to check for leaks after every engine start and to replace filters after every 50 hours of operation or 6 months.

Plaintiffs have alleged that the Yamaha 10-micron fuel/water separator was unreasonably dangerous due to a manufacturing defect, a design defect, and inadequate warnings provided within the product. Plaintiffs recognize that YMUS relies on the "read

and heed" rule from the Restatement (Second), however Plaintiffs argue that the "read and heed" rule has changed, and the drafters of the new Restatement referred to Comment j as "unfortunate language." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W. 2d 328, 336 (Tex. 1998). Plaintiffs also maintain that while YMUS bases much of their argument on the "read and heed" rule, YMUS ignores much of the underlying law regarding design defects under the Restatement (Second).

Plaintiffs argue that in order to show that a product was defective in its design, a user needs to show that the product was defective and unreasonably dangerous for its "normal" use. *Vickers v. Chiles Drilling Co.* 822 F.2d 535 (5th Cir., 1987). "In admiralty cases, the 'normal' use of a product includes all reasonably foreseeable uses, **including foreseeable misuse**." *Id.* at 538 (emphasis added). Plaintiffs' experts, Vigilante and Kasbekar, have opined that this failure to change the filters every six months is both understandable and foreseeable. Plaintiffs also assert that without adequate warnings regarding the risks associated with extended use and through-corrosion, the user of the filter would not know that surface corrosion could be through-corrosion that leads to leaks of fuel.

Plaintiffs maintain that there are too may questions of fact regarding the adequacy of the warnings and how they failed to convey the risk of explosion should they not be changed under the recommended six-month interval to simply claim that Henderson's failing to follow that recommendation means that Plaintiffs cannot prove any of their products liability claims against YMUS. The Court agrees and finds that there are genuine issues of material fact for trial as to whether the use of this filter was a foreseeable use or

misue. As such, the Court finds that summary judgment is inappropriate at this time on the issues of strict liability and negligence.

### Failure to Warn

Federal and state courts in Louisiana recognize that a "manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." *Hinson v Techtronic Indus. Outlets, Inc.*, 126 F. Supp. 2d 747, 757 (W.D. La. 2015). See also *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986). In assessing what hazards are foreseeable, a manufacture is held to the status of an expert. *Pavlides v. Galveston Yacht Basin*, 727 F.2d 330, 338 (5th Cir. 1984). If the trier of fact determines that the inherent danger in the product is not obvious, and that the consumer is not trained to know or is not aware of the danger, then the warning, or lack thereof, must be scrutinized. *Asbestos Plaintiffs v. Bordelon, Inc.*, 726 So. 2d 926 (La. App. 4 Cir. 1998).

YMUS argues that the evidence demonstrates that neither Henderson or Gonzalez read the on-packaging and/or on-product warnings and instructions relating to the subject filters. As such, YMUS asserts that plaintiffs cannot prove that the alleged lack of additional warnings/instructions or, alternatively, the alleged inadequacy of the warnings/instructions that were provided, was a cause in fact of the subject incident and, therefore YMUS argues that it is entitled to summary judgment on Plaintiffs' failure to warn claims.

YMUS argues alternatively that it is entitled to summary judgment on Plaintiffs' failure to warn claims because it did not have a duty to warn Plaintiffs of the obvious

dangers of conducting electrical work without first ensuing that the power sources on the vessel were disengaged.

Plaintiffs cite to comment j of 402A of the Restatement (Second) as well as the Louisiana Products Liability Act ("LPLA") to argue that under this authority, the plaintiff would bear the burden of product that, but for the inadequate warning, the injury would not have occurred. Plaintiffs assert that this ignores the fact that warnings are an "imperfect means to remedy a product defect." *Id.* YMUS relies on a statement from Gonzalez in which he admitted that he did not read the instructions or statements written on the filter at issue. Plaintiffs respond to YMUS argument by pointing out that Gonzalez also states in the same responses that he was not provided with an adequate warning. Plaintiffs maintain that the primary issue with YMUS' argument is that it ignores the location of the filter. Plaintiffs argue that the location of the filter made it difficult to see from any point while it was mounted in the vessel and the filter itself was corroded to the point that many of the words on the filter were not legible.

Plaintiffs also dispute the two other statements that YMUS relies on as "warnings" which are: (1) Check for leaks after installation and after every engine start up; and (2) replace filter every 50 hours or six months, whichever comes first. Plaintiffs argue that neither of these instructions could be considered warnings that would have placed Gonzalez or Henderson on alert regarding the danger of rust and through-corrosion in the filters.

Plaintiffs also argue that contrary to YMUS' position that the dangerous were obvious, they are not. Plaintiffs assert that while the general population understands that

gasoline is flammable, the Yamaha filter does not instruct to check for leaks of gasoline from its product, it simply says to check for leaks after installation. Plaintiffs maintain that the rick of through-corrosion in the metal of the filter container is also not an obvious condition. There are several disputed of fact as to whether the instructions written on the filter itself are even "warnings" and Plaintiffs argue that there is no consensus that, had Gonzales seen these writings, the explosion could have been prevented. Accordingly, the Court finds that there are genuine issues of material fact for trial as to the sufficiency of the warnings and these matters will be left for the jury to decide at the trial of this matter.

<u>**CONCLUSION**</u>

For the reasons set forth above, "Yamaha Motor Corporation, U.S.A.'s Motion for Summary Judgment Regarding Plaintiff's Claims of Negligence, Strict Liability and Failure to Warn" [Doc. 239] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 17th day of August, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**