UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendant Yamaha Motor Corporation, U.S.A's Motion for Summary Judgment on Causation and on Plaintiffs' Manufacturing Defect Claims" [Doc. 241]. Yamaha Motor Corporation, U.S.A. ("YMUS") moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in its favor on the grounds that the record evidence establishes, as a matter of law, that:

(1) Plaintiffs' own negligence in (a) failing to read, let alone heed, the on-product instructions; and (b) performing electrical work on a fully energized Vessel with actual knowledge of the presence of gas and gas vapors was the sold proximate cause of the subject accident and Plaintiffs' resulting injuries;

(2) There was no "manufacturing defect" in the 2015 Yamaha MAR-FUELF-IL-TR 1—Micron Water/Fuel Separating Filters that are the subject of Plaintiffs' Complaints ("Subject Filters"), In that they are identical in composition and character to every other water/fuel separator filter in the product line; and

(3) By definition, there cannot be a "manufacturing defect" in a product that, like the Subject Filters, complied with the final design specifications of the company

(Sierra International, Inc. ("Sierra")) that, together with its contractors, designed, manufactured, and tested them.

Plaintiffs oppose the motion [Docs. 302;305] and YMUS has submitted reply memoranda [Doc. 357]. As such, this matter is fully briefed and ready for ruling.

## FACTUAL STATEMENT

These consolidated lawsuits involve a boat explosion and fire that occurred July 29, 2018, which caused injury to the plaintiffs including Jeremy Eades.[1]  Mr. Eades passed away on October 28, 2018 in New Blaine, Arkansas.[2] On January 24, 2019, Cortney Blair Alston filed a supplemental amended complaint as Administratrix of the Estate of Mr. Eades, and on behalf of his minor children, M.T.A. and I A., and on behalf of Ruth Eades and Leland Eades, Mr. Eades natural mother and father.[3]

At the time of the incident the boat, a 2014 Sea Fox 256 Commander, was equipped with two 2013 Yamaha F150XA engines ("Subject Engines").[4] The boat was also equipped with the Subject Filters, which are designed to filter particulate matter and water our of the fuel before it reaches the engines.[5]

On December 7, 2017, the boat was damages in an accident and taken to the Olmstead Shipyard in Lake Charles, Louisiana for repairs.[6] Olmstead Shipyard received the boat at the shipyard in March 2018, but did not begin the repairs until May 2018.[7]

---

[1] Doc. 1, ¶ 4.
[2] Doc. 78, ¶ 4.
[3] Id.
[4] Doc. 239-2. Defendant's Exhibit A.
[5] Doc. 239-3. Defendant's Exhibit B.
[6] Doc. 239-5. Defendant's Exhibit D.
[7] Doc. 239-6. Defendant's Exhibit E.

Olmstead Shipyard completed the repairs on or about June 25, 2018, and Henderson retrieved the boat on or around July 26, 2018.

After retrieving the boar, Henderson towed the boat to the home of Randy Englebert, where he customarily stored it, in anticipation of his plans to go fishing with Plaintiffs, Galloway Outlaw-Knight, Hugo Gonzalez, and Jeremy Eades.[8] The following day, Henderson injured his back in a car accident. He told the others, including Plaintiffs, that he wouldn't be able to go, but they were could still use the boat. *Id.*

The morning of the incident, Plaintiffs arrived at Engelbert's camp and Eades tried to start the subject engines to make sure they would not start before the batteries were changed. Gonzales retrieved the new batteries from his truck, went into the boat, opened the battery compartment, removed the old batteries and proceeded to install the new batteries. Plaintiffs did not inspect the vessel for fuel leaks prior to launching,[9] and did not review any manuals regarding the vessel prior to the accident. [10]

Yamaha is aware that the filters may be mounted in the bilges of boats, yet has never suggested they should not be, and has never prohibited filters from being mounted in bilges.[11] Sierra International, who manufactured the filters, also knows the filters may be installed in the bilge, and confirms that they are designed for that environment, including the possible accumulation of saltwater.[12] The vessel design was audited by the National Marine Manufacturers Association ("NMMA") and was certified using the standards of the

---

[8] Doc. 239-7. Defendant's Exhibit F.
[9] Defendant's exhibit B, Hugo Gonzalez, pp. 133:20–134:6, 136:22–25.
[10] *Id.* pp. 133:20–134:6, 136:22–25; 137:18–21.
[11] Defendant's exhibit C, Mills depo. p. 86:25–7.
[12] Defendant's exhibit D, Sierra International depo. pp. 143:14–144:16.

American Boat and Yacht Counsel ("ABYC").[13] Plaintiffs dispute this fact. Sea Fox maintains that the location of the filters was compliant with ABYC requirements.[14] Plaintiffs dispute this fact.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

---

[13] Defendant's exhibit E, Marhevko Report, p. 10–11.
[14] *Id*.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

### *Causation and Negligence*

Defendants YMUS first move to dismiss Plaintiffs' claims arguing that Plaintiffs' own actions were the sole proximate cause of the subject accident and plaintiffs' resulting injuries. YMUS acknowledges that few principles are more fundamental to product liability law, whether a plaintiff's claims are predicated on the theory of negligence or strict liability, than a plaintiff's burden to "clearly prove[] a causal relationship between [their] injuries and the use of the product." *Charles v. Bill Watson Hyundai, Inc.*, 559 So. 2d 872, 874 (La. App. 4th Cir. 1990)(citing *Weber v. Fidelity Cas. Ins. Co. of New York*, 259 La. 599, 250 So. 2d 754, 756 (1971)).

Causation is an essential element of Plaintiff's negligence and product liability claims. *Bell v. Jet Wheel Blast, Div. of Ervin Indus.*, 462 So. 2d 166, 168 (La. 1985). To recover from a seller on a theory of strict liability, plaintiff must plead and prove: (1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the

time the product left the control of the manufacturer or supplier. *Bell v. Jet Wheel Blast, Div. of Ervin Indus.*, 462 So. 2d 166, 168 (La. 1985).

YMUS references *Moore v. Jefferson Distilling Denaturing Co.* 169 La. 1156, 126 So. 691 (La. 1930), in which there was a wrongful death case arising out an an explosion of a 55-gallon steel drum. In *Moore,* the widow of a man killed as a result of the explosion sued the originating supplier of the drums alleging, inter alia, that it had negligently placed unlabeled steel drums on the market, without warning that they contained or previously contained alcohol, an explosive substance. The *Moore* court concluded that "[m]anifestly, a thing cannot be said to be 'imminently dangerous to human life' merely because it can be made to explode by a person who throws care and caution aside, and acts. . . 'in wanton disregard of consequences.'" *Id.*

YMUS also cites *Borowicz v. Chicago Mastic Co.*, 367 F.2d 751, 758 (7th Cir. 1966), in which a carpenter was severely injured when he used the defendant's highly flammable adhesive cement in a kitchen remodeling job within 3 feet of a gas stove, resulting in a flash fire. The *Borowicz* court ultimately found that the plaintiffs' injuries were caused by his own negligence as he knowingly used this product within an admitted three feed of a gas stove.

YMUS maintains that the instant case should follow the outcomes of the *Moore* and *Borowicz* cases arguing that Gonzalez also knew that gasoline and gasoline vapors are highly flammable and potentially explosive. YMUS argues that Gonzales admitted that he could smell gasoline before the explosion and as such, his conduct is the sole proximate cause of the subject incident.

Plaintiffs dispute this and argues that YMUS has insinuated incorrectly that Gonzalez knew that the fuel water separators were leaking, or that there was gas preset in the bilge compartment where he was working on the perko switch. Plaintiffs maintain that YMUS' argument is based solely on two hearsay statements that do not fully support what YMUS is claiming.

First, Plaintiffs argue that Gonzales testified that he, at an earlier point, smelled a faint smell of gas in the area while on the boat, but before working on the perko switch. Eades later mentioned something similar to Gonzales, to which Gonzales attributed the smell to passing boats on the water. Doc. 302-2. *Gonzalez Dep.* p. 174. Plaintiffs point out that Gonzales was specifically asked in his deposition if he saw gas accumulating in the bottom of the vessel and he replied in the negative. *Id.*

Second, Plaintiffs argue that in the paramedic's records of the accident it says that Gonzales "was assisting changing a battery in a boat when a spark occurred, causing gas in the water in the bottom of the boat to ignite." Doc. 241-9 p. 20. Plaintiffs argue that the report does not say that Gonzalez smelled gas and continued working. Plaintiffs further argue that Gonzalez completed a written statement for the LDWF investigation and in that statement, Gonzalez makes absolutely no mention of smelling gas fumes prior to the explosion.

Plaintiffs assert that the instant case is also not compatible to the *Moore* and *Borowicz* cases that YMUS cited because in *Moore*, there were multiple witnesses who testified that there was flammable liquid that they actually saw in the bottom of a container and in the instant case the only evidence about smelling gas fumes is the "faint smell"

testimony from Gonzalez himself. In the *Borowitz* case, there were warnings on the flammable liquid cement product specifically noting that all fires and flames needed to be put out. And in the instant case, Plaintiffs ague that Gonzalez did not see the gasoline in the bilge compartment and if he was unaware of the presence of the flammable product he had no reasonable expectation for that flammable product to be in the area. As such, Plaintiffs maintain that Gonzalez should not be deemed negligent when he worked in that area.

The Court finds that there are genuine issues of material fact for trial as to the issue of negligence and if Gonzales actions were the sole proximate cause of the explosion. As such, the Court finds that summary judgment is inappropriate at this time on the issues of causation and negligence.

### *Manufacturing Defects*

YMUS next argues that the filters at issue did not deviate from the manufacturer's specifications for the product. The Fifth Circuit and federal courts in other jurisdictions have held that to prevail on a manufacturing defect claim, a plaintiff must plead and prove that "the allegedly defective product differs from other products in the same product line." *Casey v. Toyota Motor Eng'g Mfg. N. Am., Inc*, 770 F. 3d 322, 329 (5th Cir. 2014).

YMUS asserts that with respect to the first of the alleged manufacturing defects, Plaintiffs' claims must fail because there were no design and/or manufacturing specifications as to the thickness of the exterior coating applied to the 10-micron filters and, therefore, the Subject Filters could not have deviated from those standards.

The second of the alleged manufacturing defects, that Yamaha expected there to be an epoxy coating on the outside and there was instead an alkyd paint coating, YMUS argues must fail because the specifications from which the Plaintiffs base their argument can not be characterized as the final design specifications because the document does not specify: (1) the type or thickness of metal to be used on the filter or cannister; (2) the type of metal to be used on the fixed top part of the filters; (3) the gasket to be used on the top of the filter; (4) the spring to be used in the filter; and (5) the thickness of the coating to be applied or the method for applying it to the interior or exterior surfaces of the cannister.

YMUS argues that the third of the alleged manufacturing defects, the purported variability in the coating thickness, suffers from the same flaws as the first. YMUS maintains that the design drawings and manufacturing/production specifications used to produce the 10-micron filters, including the Subject Filters, did not specify a coat thickness.

Plaintiffs' dispute this and argue that YMUS leaves out the history behind this product and that there is not definitive specification for this product. Plaintiffs assert that there are two different specifications for the filter at issue and there are questions about which specifications were followed by the manufacturer in the instant case. Plaintiffs argue that a reasonable jury could infer that Yamaha did intend for epoxy coating to be on the outside of these filters and there is a genuine issue of material fact as to whether the alkyd paint on the canister at issue meets the manufacturing specifications initially provided for the filters.

The Court finds that there are genuine issues of material fact for trial and the jury should determine whether these differences in paint thickness constitute a manufacturing

defect in the filter at issue in this case. As such, the Court finds that summary judgment is inappropriate at this time on the issues of manufacturing defects.

## CONCLUSION

For the reasons set forth above, "Defendant Yamaha Motor Corporation, U.S.A's Motion for Summary Judgment on Causation and on Plaintiffs' Manufacturing Defect Claims" [Doc. 241] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 22nd day of August, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**