UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO. 2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendants' Rule 56 Motion for Partial Summary Judgment to Dismiss all Wrongful Death Claims" [Doc. 246]. Defendants seek to dismiss all Plaintiff's claims for Wrongful Death of Jeremy Eades on the grounds that there is no evidence that the subject accident was the cause of Mr. Eades' untimely death. Plaintiffs oppose this motion [Doc. 264] and Defendants have submitted reply memoranda to the opposition [Doc. 271]. As such, this matter is fully briefed and ready for ruling.

## FACTUAL STATEMENT

These consolidated lawsuits involve a boat explosion and fire that occurred July 29, 2018, which caused injury to the plaintiffs including Jeremy Eades.[1] Mr. Eades passed away on October 28, 2018 in New Blaine, Arkansas.[2] On January 24, 2019, Cortney Blair Alston filed a supplemental amended complaint as Administratrix of the Estate of Mr. Eades, and on behalf of his minor children, M.T.A. and I A., and on behalf of Ruth Eades and Leland Eades, Mr. Eades natural mother and father.[3]

---

[1] Doc. 1, ¶ 4.
[2] Doc. 78, ¶ 4.
[3] Id.

At the time of the incident the boat, a 2014 Sea Fox 256 Commander, was equipped with two 2013 Yamaha F150XA engines ("Subject Engines").[4] The boat was also equipped with the Subject Filters, which are designed to filter particulate matter and water our of the fuel before it reaches the engines.[5]

On December 7, 2017, the boat was damages in an accident and taken to the Olmstead Shipyard in Lake Charles, Louisiana for repairs.[6] Olmstead Shipyard received the boat at the shipyard in March 2018, but did not begin the repairs until May 2018.[7] Olmstead Shipyard completed the repairs on or about June 25, 2018, and Henderson retrieved the boat on or around July 26, 2018.

After retrieving the boar, Henderson towed the boat to the home of Randy Englebert, where he customarily stored it, in anticipation of his plans to go fishing with Plaintiffs, Galloway Outlaw-Knight, Hugo Gonzalez, and Jeremy Eades.[8] The following day, Henderson injured his back in a car accident. He told the others, including Plaintiffs, that he wouldn't be able to go, but they were could still use the boat. *Id.*

The morning of the incident, Plaintiffs arrived at Engelbert's camp and Eades tried to start the subject engines to make sure they would not start before the batteries were changed. Gonzales retrieved the new batteries from his truck, went into the boat, opened the battery compartment, removed the old batteries and proceeded to install the new

---

[4] Doc. 239-2. Defendant's Exhibit A.
[5] Doc. 239-3. Defendant's Exhibit B.
[6] Doc. 239-5. Defendant's Exhibit D.
[7] Doc. 239-6. Defendant's Exhibit E.
[8] Doc. 239-7. Defendant's Exhibit F.

batteries. Plaintiffs did not inspect the vessel for fuel leaks prior to launching,[9] and did not review any manuals regarding the vessel prior to the accident. [10]

Yamaha is aware that the filters may be mounted in the bilges of boats, yet has never suggested they should not be, and has never prohibited filters from being mounted in bilges.[11] Sierra International, who manufactured the filters, also knows the filters may be installed in the bilge, and confirms that they are designed for that environment, including the possible accumulation of saltwater.[12] The vessel design was audited by the National Marine Manufacturers Association ("NMMA") and was certified using the standards of the American Boat and Yacht Counsel ("ABYC").[13] Plaintiffs dispute this fact. Sea Fox maintains that the location of the filters was compliant with ABYC requirements.[14] Plaintiffs dispute this fact.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

---

[9] Defendant's exhibit B, Hugo Gonzalez, pp. 133:20–134:6, 136:22–25.
[10] *Id.* pp. 133:20–134:6, 136:22–25; 137:18–21.
[11] Defendant's exhibit C, Mills depo. p. 86:25–7.
[12] Defendant's exhibit D, Sierra International depo. pp. 143:14–144:16.
[13] Defendant's exhibit E, Marhevko Report, p. 10–11.
[14] *Id.*

The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Defendants Yamaha Motor Corporation, U.S.A. and Sea Fox Boating Company, Inc. ("Defendants") move to dismiss all of Plaintiffs' Wrongful Death claims for Jeremy Eades arguing that there is no evidence that the subject accident was the cause of Mr. Eades' untimely death. Defenfants' first argue that the testimony of Dr. Henderson, a

plastic surgeon with experience in treating burns, is insufficient to prove medial causation and should be excluded on this issue. Defendants argue that Dr. Henderson's testimony and opinions are inadmissible to the issue of causation because Dr. Henderson is not qualified to render an opinion regarding the cause of death. Defendants cite to Rule 702 of the Federal Rules of Evidence as well as a *Daubert* test to argue that the testimony of Dr. Henderson should be excluded.

Rule 702 provides a two-prong test for the admissibility of expert testimony: (1) the evidence must "assist the trier of fact," that is, be relevant; and (2) the evidence must be reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* provides an illustrative list of factors that may aid a court in evaluating reliability: (1) whether the expert's theory can be tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and control; and the degree to which the technique or theory has been generally accepted in the scientific community.

Defendants maintain that the letter from Dr. Henderson that Plaintiffs rely on is devoid of research or analysis as to: (1) the types of drugs in Mr. Eades' system; (2) the likely interactions, side effects, and/or safe dosages of those drugs; and (3) whether Mr. Eades was taking the appropriate dosages. Doc. 246-10 *Exhibit I Deposition Testimony of Dr. Henderson* p. 65. Defendants also argue that Dr. Henderson ignored Mr. Eades' preexisting physical, emotional, and psychological issues and history of taking narcotics.

Plaintiffs dispute this and assert that Dr. Henderson's qualifications to serve as an expert witness cannot be legitimately challenged. Plaintiffs point out that Dr. Henderson is

a medical doctor, a board-certified plastic and reconstructive surgeon who deals with burn victims. Seventy-five percent of his practice is reconstructive surgery with the other twenty-five percent consisting of plastic surgery. Doc. 264-13 *Deposition Testimony of Dr. Henderson.* Plaintiffs further argue that as a plastic and reconstructive surgeon, Dr. Henderson had to take courses in Psychiatry. Doc. 264-12 *Deposition Testimony of Dr. Henderson.* Plaintiffs maintain that Dr. Henderson is not required to be a Psychiatrist for his testimony to be admissible. The Fifth Circuit has held that if the offering party provides some reasonable indication of qualification, the expert testimony can be admitted, allowing the trier of fact to consider the weight to be given the expert's qualifications. *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999).

Plaintiffs address the reliability arguments raised in Defendants' brief and emphasize that the reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *Daubert*, 509 U.S. at 589. Dr. Henderson's opinions are based upon his meeting and observations of Mr. Eades, a review of Mr. Eades' records, and his extensive experience in his field dealing with burn victims. Additionally, Dr. Henderson reviewed the autopsy report in which three other doctors examined Jeremy's body and determined that his cause of death was accidental. The sufficient facts or data relief upon by the expert may include inadmissible evidence, hypothetical facts, and other experts' opinions. *Bryan v. John Bran Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978).

Defendants also argue that Mr. Eades had longstanding issued with anxiety, depression, disability, PTSD, and pain-relieving drugs before the subject accident.

Defendants assert that there is no competent medical evidence that relates Mr. Eades's death to his burn injuries and no genuine issue of material fact exists as to the proximate cause of Mr. Eades' death.

Defendants argue, in the alternative, that if Mr. Eades' death is a suicide, it was not foreseeable and was a superseding, intervening event that broke the causal chain. While proximate cause is generally a question of fact, where no reasonable tried of fact could find that the defendant's negligence was the proximate or legal cause of Mr. Eades' death, then the defendant is entitled to judgment as a matter of law. *Hayes v. U.S.*, 899 F. 2d 438, 448 (5th Cir. 1990).

Plaintiffs dispute this and argue that Defendant's assertions of suicide have no evidence to support this theory. Plaintiffs argue that there was no suicide note and the state crime laboratory concluded that the cause of death was accidental mixed drug intoxication.

Although summary judgement is favored, factual inferences reasonably drawn from the evidence must be construed in favor of the non-movant. *Keszenheimer v. Reliance Standard Life Insurance, Co.*, 402 F.3d 504, 507 (5th Cir. 2005). As such, all doubt must be resolved in favor of the non-movant. *Fret v. Melton Truck Lines, Inc.*, 706 Fed. Appx. 824, 82 (5th Cir. 2017). On summary judgment, a trial court cannot make credibility determinations, nor may it inquire into the merits of an issue. *Moore v. Willis Independent School District,* 233 F.3d 871, 874 (5th Cir. 2000).

The Court finds that there are genuine issues of material fact for trial on the issues of the Wrongful Death claims and the issue of causation. The jury should decide whether the explosion caused Mr. Eades' death in this case. Under Louisiana law, "a tortfeasor takes

his victim as he finds him and is liable for all the natural and probable consequences of his negligent acts." *Chavers v. Travis*, 902 So. 2d 389, 394-395 (La. App. 4th Cir. 2005), citing *Lash v. Olin Corporation*, 625 So. 2d 1002, 1005 (La. 1993).

Accordingly, the Court finds that summary judgment is inappropriate at this time on the Wrongful Death claims and the issue of causation.

## CONCLUSION

For the reasons set forth above, "Defendants' Rule 56 Motion for Partial Summary Judgment to Dismiss all Wrongful Death Claims" [Doc. 246] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 26th day of August, 2022.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**