UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HUGO GONZALEZ** | **CASE NO.  2:19-CV-00130 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEA FOX BOAT CO INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Sea Fox Boat Company, Inc.'s Motion for Summary Judgment" [Doc. 248]. Sea Fox Boat Company, Inc. ("Sea Fox") moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss all claims asserted by Plaintiffs, Hugo Gonzalez, individually and on behalf of his minor children, C.G. and E.G.; Galloway Outlaw-Knight and Lauren M. Outlaw-Knight, individually and on behalf of their minor children, A. O-K., A. O-K., and A O-K.; and Courtney Blair Alston, as Administratrix of the Estate of Jeremy Wade Eades, deceased, and on behalf of his minor children M.T.A. and I.E. and on behalf of Ruth Eades, natural Mother of the Deceased, and on behalf of Jeremy Wade Eades. Plaintiffs oppose this motion [Doc. 326] and Sea Fox has submitted reply memoranda [Doc. 379]. As such, this matter is fully briefed and ready for ruling.

## FACTUAL STATEMENT

These consolidated lawsuits involve a boat explosion and fire that occurred July 29, 2018, which caused injury to the plaintiffs including Jeremy Eades.[1]  Mr. Eades passed

---

[1] Doc. 1, ¶ 4.

away on October 28, 2018 in New Blaine, Arkansas.[2] On January 24, 2019, Cortney Blair Alston filed a supplemental amended complaint as Administratrix of the Estate of Mr. Eades, and on behalf of his minor children, M.T.A. and I A., and on behalf of Ruth Eades and Leland Eades, Mr. Eades natural mother and father.[3]

At the time of the incident the boat, a 2014 Sea Fox 256 Commander, was equipped with two 2013 Yamaha F150XA engines ("Subject Engines").[4] The boat was also equipped with the Subject Filters, which are designed to filter particulate matter and water out of the fuel before it reaches the engines.[5]

On December 7, 2017, the boat was damages in an accident and taken to the Olmstead Shipyard in Lake Charles, Louisiana for repairs.[6] Olmstead Shipyard received the boat at the shipyard in March 2018, but did not begin the repairs until May 2018.[7] Olmstead Shipyard completed the repairs on or about June 25, 2018, and Henderson retrieved the boat on or around July 26, 2018.

After retrieving the boar, Henderson towed the boat to the home of Randy Englebert, where he customarily stored it, in anticipation of his plans to go fishing with Plaintiffs, Galloway Outlaw-Knight, Hugo Gonzalez, and Jeremy Eades.[8] The following day, Henderson injured his back in a car accident. He told the others, including Plaintiffs, that he wouldn't be able to go, but they were could still use the boat. *Id.*

---

[2] Doc. 78, ¶ 4.
[3] Id.
[4] Doc. 239-2. Defendant's Exhibit A.
[5] Doc. 239-3. Defendant's Exhibit B.
[6] Doc. 239-5. Defendant's Exhibit D.
[7] Doc. 239-6. Defendant's Exhibit E.
[8] Doc. 239-7. Defendant's Exhibit F.

The morning of the incident, Plaintiffs arrived at Engelbert's camp and Eades tried to start the subject engines to make sure they would not start before the batteries were changed. Gonzales retrieved the new batteries from his truck, went into the boat, opened the battery compartment, removed the old batteries and proceeded to install the new batteries. Plaintiffs did not inspect the vessel for fuel leaks prior to launching,[9] and did not review any manuals regarding the vessel prior to the accident. [10]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

---

[9] Defendant's exhibit B, Hugo Gonzalez, pp. 133:20–134:6, 136:22–25.
[10] *Id*. pp. 133:20–134:6, 136:22–25; 137:18–21.

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

### *Applicable Law*

Sea Fox argues that the Western District of Louisiana analyzes general maritime claims pursuant to the Third Restatement. Plaintiffs dispute this and maintain that the Second Restatement is the applicable law to maritime claims. Sea Fox cites *Ortega Garcia v. United States*, 986 F.3d 513 (5th Cir. 2021), and acknowledges that the Fifth Circuit does state that the Second Restatement is the applicable law. In fact, the Fifth Circuit directly states, "We and the Supreme Court apply the Second Restatement to maritime products liability cases." *Id.* at 531. However, Sea Fox argues that this case is distinguishable and should be analyzed under the Third Restatement pursuant *Krummel v. Bombardier Corp.*, 206 F.3d 548 (5th Cir. 2000), arguing that *Krummel* is divergent because it involved claims by a product's user, not a bystander.

This Court disagrees and finds that the Restatement (Second) is the applicable law for maritime products liability cases. The *Krummel* case, on which Sea Fox relies heavily, was a single outlier and focused on the Louisiana Products Liability Act instead of the Third Restatement. The Fifth Circuit has made clear that, "under our precedent, the Second Restatement, not the Third, supplied the substantive law for determining standing in maritime products liability claims."

Since the United States Supreme Court's decision in *East River S.S.Corp. v. Transamerica Deleval*, 476 U.S. 858 (1986), "numerous courts. . . have embraced Section 402A of the Restatement (Second) of Torts as the 'best expression' of the law of products liability under the general maritime law." *Authentment v. Ingram Barge Co.*, 977 F. Supp.2d 606, 610 (E.D. La. 2013).

Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if:
>   a. The seller is engaged in the business of selling such a product, and
>   b. It is expected to and does reach the user or consumer without substantial change in the condition on which it is sold.
> (2) The rule stated in (1) applies although:
>   a. The seller has exercised all possible case in the preparation and sale of his product; and
>   b. The user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Analysis*

### A.  Manufacturing Defect

Sea Fox first argues that Plaintiffs have not offered any evidence or expert opinion regarding a manufacturing defect. Sea Fox cites the Third Restatement in defining a manufacturing defect claim arises where a product departs from its specifications at the time of sale. Sea Fox maintains that Plaintiffs have not alleged that the Vessel was inappropriately assembled or damaged at the time it left Sea Fox's control and as such, Sea Fox is entitled to summary judgment on this theory of liability.

Plaintiffs disagree and argue that Plaintiffs' expert, Dennis Kerr, addresses how the fire started. Plaintiffs also assert that photographs and testimony about where the Filters were located in the Vessel show a manufacturing defect. Plaintiffs argue that the single drawing produced by Sea Fox show where the Filters were to be mounted and the subject Vessel does not comply with the intended placement.

Plaintiffs also maintain that Sea Fox did not have the proper specifications for the placement of the subject Filters and that the Filters are not located in the same place as documented filters on another of the same type of vessel. Plaintiffs further argue that there is expert testimony about how that corrosion occurred and led to the fuel leak which caused the explosion. Plaintiffs submit that there is enough evidence to show a genuine issue of fact as to whether the Henderson's Sea Fox vessel was manufactured defectively, and whether that defect rendered it unreasonably dangerous.

The Court finds that there are genuine issues of material fact as to the issue of a manufacturing defect. As such, this Court finds that summary judgment is inappropriate at this time on the issue of liability for manufacturing defects.

### B.  Design Defect

Sea Fox next agues that Plaintiffs have not met their burden for any allegation of Design Defect. Plaintiffs' burden is twofold: (1) they must establish the existence of a feasible alternative design, and (2) they must demonstrate that the alternative design would have prevented the harm claimed by Plaintiffs.

Sea Fox cites *Krummel* which held that in applying the required risk-utility analysis, "a plaintiff must show evidence concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extend of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design." *Id.* at 551.  Sea Fox argues that Plaintiffs' expert, Mr. Nolte, has done no independent analysis or testing as to the length of time filters would need to be exposed to a marine environment to suffer corrosion. Sea Fox further asserts that Mr. Nolte has not studied the type of corrosion a filter would suffer based on its location within the vessel and therefore he cannot state the specific rick of the location of these filters versus the benefit his alternative design would provide.

Plaintiffs argue that Sea Fox fails to mention that it too did not test any designs for the placement of the Filters in the vessel and, further, that Sea Fox does not have specific plans showing where the Filters were to be mounted, the height of the Filters, or a build book that it could reference at trial showing how this vessel was to be constructed. Plaintiffs

also maintain that the *Krummel* case, on which Sea Fox relied heavily for its "risk-utility" argument, delves deeply into design defects, but analyzes the case primarily under the Louisiana Products Liability Act, not the Second Restatement. Plaintiffs make this distinction to assert that the "risk-utility" analysis Sea Fox proposes to use is based on language from the Fifth Circuit in Louisiana Products Liability Act cases, not marine products liability cases. *Krummel*, 206 F.3d at 551-552.

Plaintiffs argue that in order to show that a product was defective in its design, a plaintiff must show that the product was defective and unreasonably dangerous for its "normal" use. *Vickers v. Chiles Drilling Co.*, 822 F2d. 535 (5th Cir. 1987). "In admiralty cases, the 'normal' use of a product includes all reasonable, foreseeable uses, including foreseeable misuse." To prove a defect in design, there must also be evidence that there was a safer alternative design available at the time and that this alternative design would have prevented the rick of harm. Further, this alternative design must be both economically and technically feasible at the time the product left the control of the manufacturer. The courts "may consider how easily the manufacturer could have designed a safer product." *Id.* at 539.

Plaintiffs argue that in his report, Mr. Nolte identified safer alternative designs for the Sea Fox vessel, with specific alternatives for where the Filters should have been located in the vessel. Specifically, Mr. Nolte opined that placing the Filters outside of the bilge on the vessel was economically and technically feasible to Sea Fox. Mr. Nolte further opined that by making small changes, the Filters in the vessel could have been mounted outside of the bilge, in compartments aft of the live wells. Plaintiffs argue that this has been done in

other Sea Fox models, and Mr. Nolte opined that doing so here would prevent significant corrosion which was seen on the Filters in this case.

Plaintiffs assert that the complaints that Sea Fox has about Mr. Nolte's opinions go to the weight of his opinions, not their admissibility, and Sea Fox can question him at trial regarding the specific "rates" of corrosion. The Court agrees and finds that there are genuine issues of material fact for trial as to the issue of Design Defect. As such, summary judgment is inappropriate at this time on the issue of Design Defect.

### C.  Defective Warning

Sea Fox argues that Plaintiffs cannot meet their burden to show that any of their suggestions would have prevented the subject incident. Sea Fox maintains that a manufacturer is required only to "warn of dangers which the manufacturer wither knows of or should know at the time the product is sold." *Authment v. Ingram Barge Co.*, 977 F. Supp. 2d 606, 615 (E.D. La. 2013).

Sea Fox further argues that pursuant to Section 402A, comment j, of the Second Restatement "where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, not is it unreasonably dangerous." Sea Fox maintains that had the warning been heeded, and Plaintiffs inspected the vessel, the explosion would not have occurred. Importantly, Plaintiffs do not dispute that the warning was given, only that the location of the warning was inadequate.

Sea Fox asserts that a manufacturer has no duty to warn where a danger is sufficiently obvious or actually known to the injured person. *Id.* at 615. Sea Fox maintains

that in the instant case, Plaintiffs, specifically Gonzales, worked as industrial welders and admitted that he knew he needed to stop work upon smelling field or risk fire and injury. As such, Sea Fox argues that Gonzales was aware of the risk and Sea Fox has not duty to warn regarding the same.

The Court notes that there is a factual dispute and Plaintiffs argue that Gonzalez did not smell gas vapor fumes. Doc. 326 p. 6. Plaintiffs argue that the National Marine Manufactures Association ("NMMA"), whose handbook was adopted by Sea Fox and used in conjunction with this vessel, recommended that the warning be placed at the rear of the boat. As such, Plaintiffs argue that the warning in the instant case was not placed in its proper location.

Plaintiffs further maintain that the "leaking fuel" warning on the transom of the vessel provides no warning other than to simply "inspect system for leaks at least once a year," in order to avoid "serious injury or death." Plaintiffs argue that this warning gives the operator no instruction on what to do other than to simply check for leaks once per year, without any instruction on where the leaks may arise or occur.

The Court finds that given the facts of this case, and how the explosion occurred, there are genuine issues of material fact as to if Sea Fox provided an adequate warning to the users of this vessel and this determination will be left to the jury to determine at trial.

### D. Misuse

Sea Fox argues that the cause of the fire was the misuse by Plaintiffs and Daniel Henderson. Sea Fox maintains that Plaintiffs must demonstrate that the claimed defect was the cause of their injuries. Louisiana "requires that a plaintiff establish four elements by a

preponderance of the evidence, namely: (1) the conduct in question was a cause in fact of the resultant harm; (2) the defendant owed a duty to the plaintiff; (3) the duty owed was breached; and (4) the risk of harm caused was within the scope of the breached duty." La. Civ. Code 2315; *Hall v. Folger Coffee Co.*, 2002-0920, p. 16 (La. App. 4 Cir. 10/1/03), 857 So. 2d 1234, 1246.

Sea Fox asserts that the subject fire, and explosions, and any resulting injurie, were caused by the superseding and intervening misuse by both Henderson and Plaintiffs. Louisiana law describes a superseding or intervening cause as one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury. *Johnson v. Morehouse Gen. Hosp.*, 63 So. 3d. 87, 116 (La. 2011). Sea Fox argues that in this matter, the misuse is multifold. First, Daniel Henderson failed to properly maintain and inspect the vessel, resulting in the condition that caused the fire. Sea Fox asserts that Henderson admits that the last time he changed the filters was the Spring of 2017, meaning that over a year elapsed between when he allegedly changed the filters and the subject fire. Sea Fox also argues that Henderson also failed to maintain the vessel by not changing the perko switch and he did not follow any recommissioning process after storing it in a field.

Sea Fox next argues that, setting aside the misuse by Henderson, Plaintiffs' own misuse was a superseding cause of the fire. Sea Fox maintains that as the operator of the vessel, it was Gonzalez's duty to conduct a pre-trip inspection, including the bilge and compartments, and to change out filters with obvious corrosion.

Plaintiffs note that the argument Sea Fox raises about the misuse of the product is the same as set forth by Yamaha Motor Company, U.S.A. in its Motion for Summary

Judgement on Causation [Doc. 241] and Plaintiffs argue that Sea Fox's argument should fail for the same reasons.

Under the Second Restatement and general maritime law, the "normal" use of a product includes all reasonably foreseeable uses, including foreseeable misuse. *Vickers*, 822 F. 2d at 538. Plaintiffs dispute Sea Fox's attempts to claim that Henderson's failure to replace the Filters every six months was not foreseeable, thus severing the link between their unreasonably dangerous vessel and the explosion. Plaintiffs argue that their experts, Vigilante and Kasbekar, have opined that this failure to change the filters every six months is both understandable and foreseeable. Plaintiffs argue that the alleged misuses are all foreseeable misuses that Sea Fox should have and could have considered when manufacturing the vessel, by placing additional warnings on the vessel, or moving the filters to an alternative and safer location, just as Sea Fox has done on other models.

Plaintiffs also dispute Sea Fox's assertions that Gonzalez knew that the fuel water separators were leaking, or that there was gas present in the bilge compartment where he was working on the perko switch. As addressed in the earlier Yamaha ruling [Doc. 462], this Court noted Gonzales testified that he, at an earlier point, smelled a faint smell of gas in the area while on the boat, but before working on the perko switch. Gonzales attributed the smell to passing boats on the water. Doc. 302-2. *Gonzalez Dep*. p. 174. Plaintiffs point out that Gonzales was specifically asked in his deposition if he saw gas accumulating in the bottom of the vessel and he replied in the negative. *Id.*

As such, the Court finds that there are genuine issues of material fact for trial precluding summary judgment as to the issue of misuse. There are several questions of fact

about the adequacy of the warning on the subject vessel, whether additional warnings should have been placed, whether the subject vessel was manufactured according to any plans or specifications, and whether the design of the subject vessel was adequate and safe.

## CONCLUSION

For the reasons set forth above, "Sea Fox Boat Company, Inc.'s Motion for Summary Judgment" [Doc. 248] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 1st day of September, 2022.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**